

DA 09-0550

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 135

NICOLE ALEXANDER, as personal representative
of the Estate of Mike Alexander, BURT OSTERMILLER,
and HELEN ALEXANDER,

      Plaintiffs and Appellants,

  v.

BOZEMAN MOTORS, INC., d/b/a BOZEMAN FORD,
DAVID A. WALLIN, BOB SNEDEKER, and ROGER BEVERAGE,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and For the County of Gallatin, Cause No. DV 2005-699
                   Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellants Nicole Alexander and Burt Ostermiller:

            Shandor S. Badaruddin, Moriarity, Badaruddin & Booke, LLC,
            Missoula, Montana

      For Appellant Helen Alexander:

            Gig A. Tollefsen, Berg, Lilly & Tollefsen, P.C., Bozeman, Montana

      For Appellees:

            Donald R. Herndon, Herndon Law Firm, P.C., Billings, Montana

      For Intervenor State of Montana:

            Bradley J. Luck, Special Assistant Attorney General, Garlington,
            Lohn & Robinson, Missoula, Montana

            Hon. Steve Bullock, Montana Attorney General, Chris D. Tweeten,
            Chief Civil Counsel, Helena, Montana

Curtis E. Larsen, Special Assistant Attorney General, Montana State Fund, Helena, Montana

For Amicus Montana Chamber of Commerce:

John W. Bennion, Attorney at Law, Helena, Montana

For Amicus Liberty Northwest Insurance Corporation:

Larry W. Jones, Law offices of Larry W. Jones, Employees of Liberty Mutual Group, Missoula, Montana

For Amicus Montana Contractor Compensation Fund, Montana Association of Counties, Sisters of Charity of Leavenworth Health System, Montana Region, Montana School Group Insurance Authority, and Montana Municipal Interlocal Authority:

Oliver H. Goe, Christy S. McCann, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

_____

Submitted on Briefs: April 8, 2010

Decided: June 9, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellants Nicole Alexander, Burt Ostermiller, and Helen Alexander (collectively Employees), appeal from an order of the Eighteenth Judicial District Court granting summary judgment in favor of Appellees Bozeman Motors, Inc., David A. Wallin, Bob Snedeker, and Roger Beverage (collectively Bozeman Motors). We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Burt Ostermiller (Ostermiller) worked for Bozeman Motors in August 2003, at Bozeman Motors's satellite office at the Four Corners intersection in Bozeman, Montana, selling recreational vehicles. Defendants Snedeker, Wallin, and Beverage all worked at Bozeman Motors and held either managerial or supervisory duties. The office in which Ostermiller was working during this time was a 12′ by 24′ prefabricated building which had been placed on an empty lot. Employees claim that Snedeker, Wallin, and Beverage decided to open the office, and knew its size and approximate volume. The office had just enough room for two desks, and had two windows and a door. The office did not have a heat source when purchased. Snedeker bought a propane gas stove for the office in order to heat it.

¶3 After the gas stove was installed and operating, Ostermiller claims that the stove leaked propane into the office and caused a build up of carbon monoxide. Ostermiller claims he became ill as a result of the inhalation of propane and/or carbon monoxide. He asserts that friends noticed a chemical smell in the office, and that he was told by friends that his body was beginning to stink of a chemical order when he was not at work.

3

Ostermiller maintains that he complained about smells in the office and his resulting symptoms, but that Bozeman Motors did nothing in response. On or about November 1, 2003, Ostermiller lost consciousness while in the office. Ostermiller was discovered at the office by his girlfriend and taken home. He did not return to work at Bozeman Motors after this time.

¶4    Michael Alexander (Alexander) began working in the satellite office sometime around November 2003. Employees claim that Bozeman Motors sent Alexander to work in the satellite office without conducting a proper investigation into the stove, and without giving him any warnings. Employees claim that Alexander complained to Beverage about headaches and upset stomach, telling him that the office was not properly ventilated and was making him sick. Alexander claimed that his dog got sick from visiting the office as well, and subsequently refused to enter the office with him. Employees claim that when Alexander complained to Bozeman Motors about the conditions and his physical symptoms, nothing was done about the stove. Employees assert that Alexander was sickened by the propane and carbon monoxide in a manner similar to Ostermiller.

¶5    Employees claim that Alexander's health and condition deteriorated to the point where he was unable to come to work.[1] Alexander and Ostermiller both claimed that they suffered physical, mental and emotional symptoms as a result of the exposures. Employees claim that Alexander was unable to care for himself as a result of his physical

---

[1] In her complaint, Helen Alexander alleged that Alexander was found unconscious at the Four Corners office by an employee of Bozeman Motors in February 2004. Helen also alleged that Bozeman Motors had represented to Alexander that the issues with the stove had been fixed.

4

and emotional injuries and had to be cared for by his mother. Alexander and Ostermiller were later diagnosed by Raymond Singer, Ph.D., as suffering from chronic effects of acute and chronic workplace exposures to a faulty ventless space heater which affected a number of neurobehavioral functions including memory, cognition and perception. Dr. Singer concluded that Ostermiller and Alexander were permanently disabled.

¶6 After he quit working at the office, Alexander arranged for an inspection of the office by Greg Brainerd (Brainerd), the owner and operator of Brainerd Home Inspection. Employees claim that Brainerd determined the stove was leaking, forwarded the results of his inspection to Bozeman Motors and told the defendants not to use the stove. After Brainerd's inspection in April 2004, the Employees claim the stove was not used again. Bozeman Motors later conducted its own investigation of the stove, but this investigation did not reveal any issues with the stove. Employees claim this investigation was inadequate in several respects.

¶7 Employees claim that Ostermiller and Alexander continued to suffer various symptoms well after their exposure. In February 2006, Alexander and Ostermiller filed suit against Bozeman Motors. Later that same month, Alexander died at Deaconess Hospital in Bozeman. Alexander's mother, Helen Alexander, and sister Nicole Alexander were later joined in the suit. The complaint set forth claims of negligence, intentional battery, and negligent infliction of emotional distress and punitive damages against the defendants.

¶8 On March 1, 2007, Bozeman Motors moved for summary judgment against the Employees. A hearing was held on September 17, 2007. The District Court granted the

motion and dismissed the complaint on March 25, 2008. The District Court held that Employees' claims were barred by the "exclusivity provision" of the Workers' Compensation Act (WCA), Title 39, chapter 71, MCA (2003).[2] In *Wise v. CNH Am., LLC*, 2006 MT 194, 333 Mont. 181, 142 P.3d 774, this Court described the scope of the exclusivity provision as follows:

> The Workers' Compensation Act generally provides the exclusive remedy for an employee who suffers an injury in the scope of his or her employment. Section 39-71-411, MCA. An employee may bring an action against an employer or fellow employee, however, "[i]f an employee is intentionally injured by an intentional and deliberate act of the employee's employer or by the intentional and deliberate act of a fellow employee." Section 39-71-413(1), MCA. The statute defines intentional injury as "an injury caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee." Section 39-71-413(3), MCA.

*Wise*, ¶ 7.

¶9 Under *Wise*, therefore, "an employee . . . must allege that he or she has been intentionally injured by the intentional act of an employer or fellow employee in order to avoid the exclusivity provision of the Workers' Compensation Act." *Wise*, ¶ 11. In response to Bozeman Motors' motion for summary judgment, Employees argued they had presented evidence demonstrating that Bozeman Motors intentionally injured them, allowing them to avoid the exclusivity provision of the WCA. Employees claimed that Bozeman Motors knew that the stove was too big for the office and that it was ruining the air and sickening Ostermiller, and knew the specific symptoms he was experiencing but did nothing to protect or warn him. Then, after Ostermiller passed out in the office,

---

[2] The 2003 version of the WCA applies in the instant case.

Bozeman Motors sent Alexander into the same conditions without any warning, and ignored his complaints until he too was permanently injured. In addition, Employees argued in their brief opposing summary judgment that the evidence with respect to Ostermiller was not as compelling, but adequate to proceed to trial.

¶10 The District Court rejected Employees' arguments, concluding they had failed to show that Bozeman Motors had deliberately intended to cause specific harm to Alexander or Ostermiller. The District Court concluded that at best, Employees had demonstrated that Bozeman Motors' conduct and omissions amounted to wanton negligence, which was insufficient as a matter of law under *Calcaterra v. Mont. Resources*, 1998 MT 187, 289 Mont. 424, 962 P.2d 590, *overruled on other grounds by Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, 338 Mont. 423, 166 P.3d 451, to avoid the WCA's exclusivity provision. *See Calcaterra*, ¶ 13 (internal quotations omitted) (stating that "allegations of negligence, no matter how wanton, are insufficient to avoid the exclusive remedy of the Workers' Compensation Act."). Furthermore, the District Court concluded that Bozeman Motors' conduct was not akin to an "intentional left jab to the chin," and therefore failed to meet the level of intentionality required to escape the WCA's exclusivity provision under *Enberg v. Anaconda Co.*, 158 Mont. 135, 137, 489 P.2d 1036, 1037 (1971).

¶11 Employees also argued that § 39-71-413, MCA, was unconstitutional because it: (1) violates equal protection under Art. II, Section 4 of the Montana Constitution; (2) is an unconstitutional grant of special privileges and immunities in violation of Article XI, Section 31; and (3) is an unconstitutional piece of special legislation in violation of

7

Article V, Section 12. The District Court rejected each of these challenges.[3] Accordingly, the District Court granted Bozeman Motors' motion for summary judgment, concluding that Employees' claims were barred by the exclusivity provision of the WCA.

¶12   Employees now appeal from the District Court's decision. We state the issues on appeal as follows:

¶13   **Issue One:**   *Did the District Court err in granting summary judgment on Alexander and Ostermiller's claims?*

¶14   **Issue Two:**   *Is § 39-71-413, MCA, unconstitutional?*

## STANDARD OF REVIEW

¶15   We review de novo a district court's grant of summary judgment applying the criteria set forth in M. R. Civ. P. 56. *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 15, 352 Mont. 212, 215 P.3d 675. Summary judgment is proper when the moving party shows an absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Mattson*, ¶ 15. If the moving party meets this burden, the non-moving party must present substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment. *Carter v. Miss. Farm Bureau Cas. Ins. Co.*, 2005 MT 74, ¶ 8, 326 Mont. 350, 109 P.3d 735.

---

[3] In its order, the District Court, citing to *Great Western Sugar Co. v. Dist. Ct.*, 188 Mont. 1, 610 P.2d 717 (1980), expressly held that the intentional act exception under § 39-71-413, MCA, is recognized under Montana law. On appeal, Bozeman Motors suggests that this statute is actually unconstitutional under Article II, Section 16 of the Montana Constitution. As the Employees rightly point out, however, Bozeman Motors has not filed a cross appeal from this portion of the District Court's order. *See* M. R. App. P. 12(4). Accordingly, we decline to consider Bozeman Motors' challenge to this statute on appeal.

¶16 Our review of constitutional questions is plenary. *Rohlfs v. Klemenhagen, LLC*, 2009 MT 440, ¶ 7, 354 Mont. 133, 227 P.3d 42. The constitutionality of a statute is a question of law, and we review the district court's conclusions in this regard for correctness. *Rohlfs*, ¶ 7.

## DISCUSSION

¶17 **Issue One:** *Did the District Court err in granting summary judgment on Alexander and Ostermiller's claims?*

¶18 The Employees contend they have presented sufficient evidence to show that Bozeman Motors deliberately intended to cause them specific harm when it allowed them to work at the Four Corners office. They argue that Bozeman Motors knew the size of the office, that the office was not ventilated, that the stove was the only heat source for the office, and that it was fouling the air and causing Ostermiller to be sick. Further, Employees claim that Bozeman Motors knew the symptoms Ostermiller was experiencing were the result of breathing the air in the office, and that Ostermiller had to remain in the office most of the day due to the weather. Employees further allege that Bozeman Motors conducted no inquiry or investigation into the source of the contaminated air, whether the stove was functioning properly, or any alternative causes for Ostermiller's symptoms.

¶19 With respect to Alexander, Employees contend that Bozeman Motors knew that Ostermiller had passed out due to the contaminated air in the office, and then became so ill he could not return to work. Yet, Bozeman Motors failed to warn Alexander of these conditions. After Ostermiller fell ill and left his employment, Bozeman Motors placed

9

Alexander in the same office, exposing him to the same conditions that had sickened Ostermiller. Alexander, who the Employees claim was known to Bozeman Motors as "not a complainer," registered the same complaints as Ostermiller had, asserting that there was an odor in the office and that he was experiencing the same symptoms as Ostermiller. Alexander was eventually overcome and then physically unable to return to work.

¶20 On appeal, Bozeman Motors does not challenge the sufficiency of these allegations for purposes of summary judgment. Instead, Bozeman Motors observes that the District Court acknowledged these allegations, but then held that, even if true, they did not rise to the level of deliberate attempt to cause specific harm. Accordingly, we too will accept these factual allegations as true solely for the purpose of considering the summary judgment motion.[4]

¶21 The disposition of this issue hinges upon whether Employees' factual allegations, taken as true and viewed in a light most favorable to the Employees as the non-moving party, are arguably sufficient to avoid the WCA's exclusivity provision by virtue of § 39-71-413, MCA, so as to entitle plaintiffs to a trial on the merits of their claims. As the Court noted in *Wise*, "an employee . . . must allege that he or she has been intentionally injured by the intentional act of an employer or fellow employee in order to avoid the exclusivity provision of the Workers' Compensation Act." *Wise*, ¶ 11.

---

[4] On appeal, Bozeman Motors interjects an array of facts which it claims shows that the injuries of Alexander and Ostermiller were caused by other medical conditions, and not by exposure to contaminated air in the Four Corners office. While such facts may play a role in ultimately establishing causation for these injuries, they are not germane to the issues currently before the Court.

Furthermore, under § 39-71-413(3), MCA, the injured employee must demonstrate that the employer deliberately and intentionally caused an "intentional injury" to the employee. This statute defines "intentional injury" as "an injury caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee injured and there is actual knowledge that an injury is certain to occur." Section 39-71-413(3), MCA. In other words, an "intentional injury" has two required elements: (1) an intentional and deliberate act specifically and actually intended to cause injury; and (2) actual knowledge of the injury's certainty.

¶22 Although much of Employees' argument in this appeal has focused on whether Bozeman Motors acted deliberately and intentionally to cause them injury, the statutory requirement that the employer have "actual knowledge" of the injury's certainty is equally significant. With respect to Ostermiller, even assuming the actions of Bozeman Motors satisfied the "intentional and deliberate" element of § 39-71-413(3), MCA, we conclude that the Employees have not set forth allegations sufficient to demonstrate that Bozeman Motors had actual knowledge that his exposure to the contaminated air in the Four Corners office was "certain" to cause him injury.[5] While Employees do aver that Bozeman Motors intentionally and deliberately exposed Ostermiller to dangerous conditions in the office, and did not respond to his complaints that he was becoming ill or otherwise take any measures to address these conditions, these allegations, viewed in a light most favorable to the Employees, simply do not establish that Bozeman Motors had

---

[5] As noted above in ¶ 10 of the Opinion, even wanton negligence is insufficient as a matter of law to invoke the exception to the exclusivity provision.

11

actual knowledge that requiring Ostermiller to work in this office would result in certain injury. Accordingly, we conclude that Employees have failed to raise a genuine issue of material fact on this essential element of their case, and that the summary judgment against Ostermiller's claims was appropriately granted.

¶23 A different scenario is presented with respect to Alexander. When Bozeman Motors sent Alexander to work in the Four Corners office, it had actual knowledge of Ostermiller's injury. Moreover, it is alleged that Bozeman Motors did not disclose Ostermiller's injury to Alexander, nor did it take any measures to investigate the cause of his injuries. Furthermore, the Employees allege that Alexander complained to Bozeman Motors about the contaminated air in the office, and told them he was becoming sickened by it. The fact that Ostermiller had previously raised these same complaints to Bozeman Motors, and then lost consciousness in the Four Corners office, when viewed in a light most favorable to the Employees, does raise a genuine issue of material fact as to whether Bozeman Motors had actual knowledge that requiring Alexander to work in the same office, without investigating or addressing the alleged contamination from the stove, was "certain" to cause him injury.

¶24 In reaching our decision, we rely on the facts presented and the law which has evolved relative to establishing intent. In 2001, the Legislature amended § 39-71-413, MCA, to its present form. 2001 Mont. Laws 1095-96. In the session law amending this statute, the Legislature specifically stated that the amendment was a response to *Sherner v. Conoco, Inc.*, 2000 MT 50, 298 Mont. 401, 995 P.2d 990, and was intended to remove the "malice" component and instead "provide that an injured employee has a cause of

action for damages against an employee or the employer's employee only if the employer or fellow employee causes an intentional injury." 2001 Mont. Laws 1096.

¶25 After these amendments, this Court rendered its decision in *Wise*. In that case, an employee (Wise) suffered an injury while operating heavy equipment. Wise claimed that his employer negligently failed to comply with state and federal workplace safety laws, and that the employer's inactions constituted intentional and deliberate conduct as defined in § 39-71-413, MCA. Applying the plain language of § 39-71-413, MCA, this Court rejected Wise's claims. The Court held that Wise's complaint alleged nothing more than ordinary negligence and alleged "no conduct that could be construed as 'intentional and deliberate' acts, other than the general allegation near the end of his complaint. Wise's attempt to characterize negligent conduct as 'intentional and deliberate' fails to bring his claim within the ambit of § 39-71-413, MCA." *Wise*, ¶ 12.

¶26 While the 2001 Legislature amendments removed "malicious" conduct from § 39-71-413, MCA, and also focused upon and narrowed the meaning of "intentional injury," we must decide in the present case what factual allegations are sufficient to raise a genuine issue of material fact that the injury was "caused by an intentional and deliberate act that is specifically and actually intended to cause injury to the employee . . . ." Section 39-71-413(3), MCA. In criminal law, intent is generally inferred by a jury from the surrounding facts and circumstances. " 'Because it is seldom subject to direct proof, intent must be inferred from the acts of the accused and the facts and circumstances of the offense.' " *State v. Gittens*, 2008 MT 55, ¶ 38, 341 Mont. 450, 178 P.3d 91 (quoting *State v. Hall*, 249 Mont. 366, 371, 816 P.2d 438, 441 (1991)).

13

Stated differently, " '[c]riminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' " *State v. Motarie*, 2004 MT 285, ¶ 8, 323 Mont. 304, 100 P.3d 135 (quoting *State v. Longstreth*, 1999 MT 204, ¶ 34, 295 Mont. 457, 984 P.2d 157). Analogizing to the intent component of the statute at issue, even if the degree of intentional conduct required under § 39-71-413, MCA, rises to a level similar to that required to prove criminal culpability,[6] an employer's intent may undoubtedly be inferred from the facts and circumstances, and direct proof that the employer intended to cause an intentional injury is not required in order to submit such an issue to the jury or survive a motion for summary judgment.

¶27 Indeed, such a scenario was present in *People v. O'Neil*, 550 N.E.2d 1090 (Ill. App. 5 Dist. 1990) (commonly referred to as *Film Recovery*), a case discussed by this Court in both *Blythe v. Radiometer Am., Inc.*, 262 Mont. 464, 866 P.2d 218 (1993), and *Lockwood v. W.R. Grace & Co.*, 272 Mont. 202, 900 P.2d 314 (1995). In *Lockwood*, the Court concluded that a plaintiff had presented sufficient allegations to support his contention that W.R. Grace had intentionally harmed him and survive a motion to dismiss. The plaintiff had alleged that W.R. Grace knew or had reason to know that extended inhalation or continuous ingestion of vermiculite and asbestos particles created a high degree of risk or harm to him; willfully and deliberately concealed its knowledge from plaintiff and co-employees; failed to provide protective equipment sufficient to

---

[6] Justice Nelson suggested as much in his concurrence in *Wise*. *See Wise*, ¶¶ 16-17 (Nelson, J., concurring).

14

avoid the danger; advised the plaintiff and other employees that it was safe to work continuously in close proximity to vermiculite and asbestos particles; and thereby proximately caused plaintiff's mesothelioma and, ultimately, his death. *Lockwood*, 272 Mont. at 208, 900 P.2d at 318. The Court stated that "intent to injure does not mean desire to injure; it means that the employer intended that the employee should undergo the injury—the exposure to the harm—of which the employer knew on a daily basis." *Lockwood*, 272 Mont. at 210, 900 P.2d at 319. In reaching its decision, the Court discussed *Film Recovery* as follows:

> In *Film Recovery*, an employee died after inhaling harmful fumes released in the course of the employer's manufacturing process; the employer knew that his employees were inhaling the harmful fumes and concealed his knowledge of the harm from the employees. We indicated that Professor Larson cited *Film Recovery* with approval as a case involving facts constituting an intentional tort sufficient to avoid exclusivity. *Blythe*, 866 P.2d at 223.
>
> The distinguishing factor between *Film Recovery* and cases such as *Blythe* is the employer's alleged knowledge that the employee is being injured, in the former, versus the employer's exposing the employee to risk of harm without certain knowledge that the employee is being or will be harmed, in the latter. *See Blythe*, 866 P.2d at 223. Under this analysis, it is clear that [the] allegation that Grace knew its acts created harm to [the plaintiff] meets both Professor Larson's definition of "intent to harm" and that of this Court in *Blythe*.
>
> Grace argues that *Film Recovery* is inapplicable here because it is a criminal case involving neither an intentional tort nor exclusivity under legislation such as the MODA. While Grace's characterization of *Film Recovery* is correct, its argument misses the point. We do not rely on *Film Recovery* as precedent for our determination that [these] allegations are sufficient to avoid exclusivity. Rather, we address it only to indicate the type of facts which will support an intentional tort sufficient to avoid exclusivity and which must be alleged in a complaint to withstand a motion to dismiss.

*Lockwood*, 272 Mont. at 210-11, 900 P.2d at 319.

15

¶28    In *Blythe*, an employee (Blythe) of Community Medical Center, Inc. (CMC), in Missoula sued the hospital for damages after he inadvertently pricked himself with a needle in an Arterial Blood Gas kit (ABG). *Blythe*, 262 Mont. at 467, 866 P.2d at 220. The needle allegedly contained blood from a patient who had been infected with the AIDS virus. The ABG kit in question was a defective kit which had been purchased by CMC at a reduced price. Blythe's claim was ultimately rejected by this Court because he failed to show the presence of an intentional harm which CMC specifically and maliciously directed at him. *Blythe*, 262 Mont. at 469, 866 P.2d at 221. Relying on *Film Recovery*, the Court held that intentional conduct could be inferred in situations "where the employer knew the employee was being harmed and continued to expose the employee to known harm after failing to disclose [such] warnings . . . ." *Blythe*, 262 Mont. at 472, 866 P.2d at 223. In Blythe's case, however, the facts and circumstances surrounding CMC's conduct failed to show intentional conduct.

¶29    In *Calcaterra*, the Court relied on a similar analysis, holding that an employee must allege and establish that an employer had "actual knowledge" that an employee was being harmed in order to satisfy the definition of an intentional harm. *Calcaterra*, ¶ 14. In that case, an employee was fatally injured at work, and his estate filed suit against the employer. The estate of the injured employee alleged that the injury was due to intentional conduct of the employer as evidenced by the employer's violation of various federal safety regulations and the fact that the employee was forced to work in unsafe conditions. *Calcaterra*, ¶ 7. This Court rejected this evidence as sufficient to demonstrate an intent to harm, stating:

Notwithstanding these principles which govern allegations or evidence insufficient to avoid the exclusivity provision, however, it is clear that § 39-71-413, MCA, provides an exception to that bar for injuries during employment which "are caused by the intentional . . . act or omission" of a fellow employee. In that regard, we have held that allegations or evidence that an employer knew its acts created a high degree of harm to an employee are sufficient to meet the intentional act requirement of § 39-71-413, MCA. See *Lockwood*, 272 Mont. at 210, 900 P.2d at 319. Under the *Lockwood* approach, however, an employee must allege and establish that the employer had actual knowledge that the employee was being harmed; allegations such as that an employer "had ample reason to know" of the harm being experienced are insufficient. *Lockwood*, 272 Mont. at 209, 900 P.2d at 318.

*Calcaterra*, ¶ 14.

¶30 In light of these cases[7] and principles of "inferred intent" well-established in the criminal law context, we hold that deliberate and intentional conduct may be inferred from factual allegations indicating that an employer knew an employee was being harmed, failed to warn the employee of the harm, and intentionally continued to expose the employee to the harm. Additionally, as required under the plain language of § 39-71-413(3), MCA, the employee must allege and demonstrate that the employer had "actual knowledge" of the certainty of injury.

¶31 Viewing the facts in a light most favorable to Alexander, we conclude that Alexander has met this burden and that summary judgment against him was improperly granted. Alexander has alleged that Bozeman Motors had actual knowledge of the harm posed by the use of the stove in the Four Corners office, and knew that he was being harmed in light of Ostermiller's previous lost consciousness. Alexander, in turn, lodged

---

[7] Although *Blythe*, *Lockwood*, and *Calcaterra* were decided prior to *Sherner* and the 2001 amendments to § 39-71-413, MCA, the Court's analysis of what constitutes "intentional" conduct in the context of the WCA's exclusivity provision remains instructive.

complaints similar to those of Ostermiller. Furthermore, Employees claim that Bozeman Motors failed to warn Alexander about the dangers posed by the stove. These factual allegations are sufficient to raise a genuine issue of material fact on this issue, and permit a trier of fact to draw the inference that Bozeman Motors deliberately and intentionally caused an intentional injury to Alexander.

¶32 For these reasons, we reverse the District Court's grant of summary judgment with respect to Alexander. With respect to Ostermiller, however, summary judgment was proper. Even if Ostermiller could set forth allegations to demonstrate that Bozeman Motors acted intentionally and deliberately in causing him harm, he cannot demonstrate that he suffered an "intentional injury" as defined by § 39-71-413(3), MCA, since there are no factual allegations sufficient to support the inference that Bozeman Motors had actual knowledge of the certainty that he would be harmed.

¶33 **Issue Two:** *Is § 39-71-413, MCA, unconstitutional?*

¶34 Because we have affirmed the District Court's grant of summary judgment with respect to Ostermiller, we must address Employees' various challenges to the constitutionality of § 39-71-413, MCA. Briefly stated, these arguments are as follows. First, Employees allege that § 39-71-413, MCA, violates the equal protection clause in Article II, Section 4 of the Montana Constitution because it subjects Montana workers to arbitrary and discriminatory action and creates an impermissible class of employees. Employees claim that the statute creates two classes of employees—those who work for small businesses, sole proprietors, and partnerships, and those who work for corporations. Employees contend that by virtue of § 39-71-413, MCA, an injured employee of the

18

former class can bring a direct cause of action against an employer, while an injured employee in the latter class cannot. Employees contend there is no rational basis for the creation of these two classes, and that allowing corporations and their employees to escape liability is unreasonable, irrational, and ignores the realities of the work place. Employees also contend that strict scrutiny should apply to the constitutional analysis of the statute.

¶35 Second, Employees claim that § 39-71-413, MCA, violates Article II, Section 31 and Article V, Section 12 of the Montana Constitution. Article II, Section 31 prohibits the enactment of legislation that confers "any irrevocable grant of special privileges, franchises, or immunities . . . ." Article V, Section 12 prohibits the enactment of any special or local legislation. Employees claim that the statute violates these provisions because it insulates or immunizes employers from their responsibility for malicious and intentional injurious conduct. Finally, Employees contend that § 39-71-413, MCA, violates their right to substantive due process of law and infringes upon their fundamental rights under the Montana Constitution. They contend that this statute deprives injured employees of a meaningful opportunity to be heard in causes of action against employers who injure them. Furthermore, they claim the statute impermissibly infringes upon workers' rights to a healthful environment, to enjoy life and liberty, to seek health, safety, and happiness, and to pursue gainful employment.

¶36 Statutes are presumed constitutional, and the party challenging a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. *Stavenjord v. Mont. State Fund*, 2003 MT 67, ¶ 45, 314 Mont. 466, 67 P.3d 229. We conclude that

Employees have failed to meet their burden of demonstrating beyond a reasonable doubt that § 39-71-413, MCA, is unconstitutional. Therefore, we affirm the District Court's rejection of Employees' constitutional challenges.

**CONCLUSION**

¶37 We affirm the District Court's grant of summary judgment with respect to Ostermiller. We also reject the Employee's constitutional challenges to § 39-71-413, MCA. However, we reverse the District Court's grant of summary judgment with respect to Alexander and remand his cause of action for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE MCGRATH
/S/ BRIAN MORRIS

Justice W. William Leaphart, concurring.

¶38 I concur in the Court's resolution of Issue One. As to Issue Two, like the Court, I affirm the District Court's rejection of the constitutional challenge. However, I would do so based upon the Employees' failure to make a plain showing of unconstitutionality. As I pointed out in my concurrence in *Oberson v. U.S. Department of Agriculture*, 2007 MT 293, ¶¶ 33-37, 339 Mont. 519, 171 P.3d 715 (Leaphart, J., concurring), the "beyond a

reasonable doubt" standard, which the Court invokes herein, is an absurd standard of decision for a question of constitutional law.


/S/ W. WILLIAM LEAPHART


Justice Jim Rice, concurring in part and dissenting in part.

¶39    I concur with the Court's conclusion that summary judgment was properly entered against Ostermiller, as well as its conclusion that § 39-71-413, MCA, is constitutional. However, I dissent from the Court's conclusion that Alexander has asserted facts necessary to evade the rule of exclusivity.

¶40    The Legislature has declared that "an objective of the Montana workers' compensation system [is to] provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease." Section 39-71-105(1), MCA. Pursuant thereto, the Legislature has provided that "[f]or all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are *exclusive*." Section 39-71-411, MCA (emphasis added); *see also Larson's Workers' Compensation Law* § 103.03 (Rev. ed., Matthew Bender Supp. 2009) (stating the two reasons for exclusivity are "to maintain the balance of sacrifices between employer and employee in the substitution of no-fault liability for tort liability" and "to minimize litigation, even litigation of undoubted merit").

¶41 Only in very limited circumstances may an injured employee avoid the exclusivity rule and pursue a lawsuit in addition to collecting benefits under the Workers' Compensation Act:

> If an employee is intentionally injured by an intentional and deliberate act of the employee's employer or by the intentional and deliberate act of a fellow employee while performing the duties of employment, the employee or in the case of death the employee's heirs or personal representatives, in addition to the right to receive compensation under the Workers' Compensation Act, have a cause of action for damages against the person whose intentional and deliberate act caused the intentional injury.

Section 39-71-413(1), MCA. The statute defines "intentional injury" as "an injury caused by an *intentional and deliberate act* that is *specifically and actually intended to cause injury* to the employee injured and there is *actual knowledge* that an injury is certain to occur." Section 39-71-413(3), MCA (emphasis added). This statutory scheme admittedly sets a very high bar for evading the exclusivity rule and maintaining an action against a covered employer, but such a bar was the deliberate and calculated action of the Legislature. *Wise v. CNH Am., LLC*, 2006 MT 194, ¶¶ 9-11, 333 Mont. 181, 142 P.3d 774. Further, the bar is consistent with the common understanding of workers' compensation exclusivity among the states, and this Court's precedent.

¶42 *Larson's Workers' Compensation Law* illustrates the level of intention necessary for an injury to be taken outside of workers' compensation exclusivity. Notably, an employer's alleged conduct which "goes beyond aggravated negligence" and includes "knowingly permitting a hazardous work condition to exist," "wilfully failing to furnish a safe place to work," or "withholding information about worksite hazards" is not sufficient. *Larson's Workers' Compensation Law* § 103.03. Thus, the "toleration of a

22

dangerous condition may or may not set the stage for an accidental injury later. But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin." *Larson's Workers' Compensation Law* § 103.03. This is not mere commentary—*Larson* explains that Montana is "firmly within the camp" subscribing to these principles. *Larson's Workers' Compensation Law* § 103.04[3][c].[1]

¶43    This Court has already held, in a similar case, that the intention necessary to evade exclusivity did not exist as a matter of law when an employer knew of previous injuries caused by an unsafe work environment and, despite such knowledge, directed the employee to work in the environment without informing him of such a danger. *Noonan v. Spring Creek Forest Prods., Inc.*, 216 Mont. 221, 224-25, 700 P.2d 623, 625 (1985).[2] Noonan reached into a wood planer to free a jammed piece of wood when the planer entrapped his hand, sustaining serious injuries. *Noonan*, 216 Mont. at 222, 700 P.2d at 624. Noonan brought a suit against his employer, Spring Creek, claiming that Spring Creek "had been requested to repair the planer but failed to do so" and that it "knew of

---

[1] A small sampling of other decisions from the "camp" include: *Russell v. United Parcel Serv., Inc.*, 666 F.2d 1188 (8th Cir. 1981); *Rolon v. Ortho Biologics LLC*, 404 F. Supp. 2d 409 (D.P.R. 2005); *Frye v. Airco, Inc.*, 269 F. Supp. 2d 743 (S.D. Miss. 2003); *Loughridge v. Overnite Transp. Co.*, 649 F. Supp. 52 (E.D. Mo. 1986); *Provo v. Bunker Hill Co.*, 393 F. Supp. 778 (D. Idaho 1975); *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837 (Nev. 2000) (per curiam); *Angle v. Alexander*, 945 S.W.2d 933 (Ark. 1997); *White v. Apollo-Lakewood, Inc.*, 720 S.W.2d 702 (Ark. 1986); *Grillo v. Natl. Bank of Wash.*, 540 A.2d 743 (D.C. App. 1988); *Hildebrandt v. Whirlpool Corp.*, 364 N.W.2d 394 (Minn. 1985); *Blailock v. O'Bannon*, 795 So. 2d 533 (Miss. 2001); *Cf. Taylor v. Transocean Terminal Operators, Inc.*, 785 So. 2d 860 (La. App. 4th Cir. 2001).

[2] Although this Court decided *Noonan* prior to the 2001 amendments to § 39-71-413, MCA, the analysis of intent remains instructive. *See* Opinion, ¶ 30 n.7.

prior accidents on the planer but concealed the fact of such accidents from Randy Noonan." *Noonan*, 216 Mont. at 223, 700 P.2d at 624.

¶44 On appeal, Noonan offered cases for the proposition that "[t]he existence of this knowledge or intent may be inferred from the employer's conduct and surrounding circumstances." *Noonan*, 216 Mont. at 224, 700 P.2d at 625. However, we rejected that approach, concluding:

> The facts do establish that the owners of Spring Creek operated a hazardous and dangerous workplace. The number of injuries that occurred among a relatively small number of workers provides ample support for this observation. However, to translate this situation into an inference of tortious intent on behalf of the employer would require a standard of law that this Court has thus far refused to adopt.

*Noonan*, 216 Mont. at 225, 700 P.2d at 625. In a special concurrence, Justice Morrison offered an explanation which is directly contradictory to the Court's approach today:

> There is sufficient evidence in this record to allow a factual determination if we apply a "willful" standard. *The conscious disregard of others is the type of conduct that rises to the level of willfulness and were we to adopt such a standard for Workers' Compensation purposes this case should be permitted to go to a jury* for resolution of the liability and damage questions.
>
> I believe the legislature intended Workers' Compensation to be the exclusive remedy except in those situations where *the defendant's conduct arose from specific intent rather than willfulness*. In other words, an assault would allow a personal injury action. Gross negligence, such as we have here, would not.
>
> Were we to open the door for personal injury actions where the defendant's conduct rises to a level of gross negligence or willfulness, I can foresee personal injury actions in many Workers' Compensation cases. Although there may be a basis in sound public policy for allowing this, I do not believe that is what the legislature intended.

*Noonan*, 216 Mont at 226, 700 P.2d at 626 (Morrison, J., concurring) (emphasis added).

I agree with both Justice Morrison's legal analysis and his concern about the future effect

24

of a contrary decision.

¶45 Ostermiller and Alexander indicate that they presented the following factual assertions to the District Court, as quoted from their briefing:

(1) CO was present at the satellite office[;] (2) Propane was present in the satellite office; (3) Mike Alexander and Burt Ostermiller were breathing both chemicals during the time they were in the satellite office; (4) Mike Alexander and Burt Ostermiller suffered injuries as a proximate result of their exposure to the gas(es); (5) [Bozeman Motors] knew or should have known of the presence of gas(es) originating from the stove, and (6) [Bozeman Motors] did nothing to avoid causing the expected and anticipated harm to [Burt] Ostermiller and Mike Alexander.

Ostermiller and Alexander then delineate sixteen facts which they allege that Bozeman Motors knew about the work environment:

1. The size of the satellite office; 2. That the stove was too big for the office; 3. That the stove was the primary, or rather, only, source of heat for the small building; 4. That the office was unventilated; 5. That the stove was fouling the air; 6. That Ostermiller was getting sick from breathing the air at the office; 7. The specific symptoms that Ostermiller was experiencing; 8. That Oste[r]miller claimed the symptoms were a result of breathing the air in the office; 9. That they had conducted no inquiry or investigation into the source of the bad air or whether the stove was functioning properly or other alternative causes for Ostermiller's symptoms; 10. That the weather was such that Ostermiller had to remain inside the office throughout most of the day; 11. That Ostermiller had passed out and become so ill that he could not return to work; 12. That Mike Alexander was working in the same office during a colder time of year with the exact same stove operating just as it had previously; 13. That Mike Alexander was breathing the air in the office; 14. That no warning had been provided to Mike Alexander; 15. That Mike Alexander, who was known not to complain about anything, was complaining of the same odor and the same symptoms experienced by Ostermiller; 16. That Mike Alexander was also overcome and was physically unable to return to work.

Accepting all of these allegations as true for purposes of summary judgment, Alexander still does not allege facts demonstrating "an intentional and deliberate act that is

25

specifically and actually intended to cause injury to the employee." Section 39-71-413(3), MCA. At most, this alleged conduct establishes aggravated negligence in failing to provide a safe working environment, and although reprehensible, the Legislature has deemed such conduct insufficient to remove this case from the exclusivity provision of the Workers' Compensation Act. *See* § 39-71-413(3), MCA; *Wise*, ¶ 12. Only cases involving intentional and deliberate acts specifically intended to cause the injury to the injured employee are permitted under the exception to exclusivity. *See Taylor*, 785 So. 2d at 861, 864 (employee stabbed by fellow employee).

¶46 Therefore, I would affirm the District Court's grant of summary judgment with regard to Alexander.


/S/ JIM RICE