DA 10-0342

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 170

RICHARD KERSHAW,

      Plaintiff and Appellant,

  v.

MONTANA DEPARTMENT OF TRANSPORTATION
and JOHN DOES I-X,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District, In and For the County of Yellowstone, Cause No. DV 08-0607 Honorable Ingrid G. Gustafson, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Daniel G. Gillispie; Gillispie Law Office, PLLC; Billings, Montana

      For Appellee:

            Pamela Snyder-Varns; Risk Management and Tort Defense Division; Helena, Montana

                        Submitted on Briefs: April 6, 2011

                                Decided: July 19, 2011

Filed:

_____
                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Richard Kershaw (Kershaw) brought an action alleging wrongful discharge from employment and intentional infliction of emotional distress against his former employer, Montana Department of Transportation (MDT or Department).  Kershaw appeals from the orders entered by the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to MDT on Kershaw's claims and denying his motions to amend his complaint.  We affirm.  We restate the issues on appeal as follows:

¶2    ***1.  Did the District Court err by concluding that the preclusion of Kershaw's claim from the Wrongful Discharge from Employment Act (WDEA) did not violate his constitutional rights to equal protection and to a jury trial?***

¶3    ***2.  Did the District Court abuse its discretion in denying Kershaw's motions for leave to amend the complaint?***

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4    Kershaw worked at MDT from 1984 until February of 2007.  In 2006, Kershaw was working as a bureau chief when he was placed on administrative leave pending a Department investigation into his job performance.  On October 6, 2006, Kershaw met with several Department officials concerning the investigation and was asked whether he preferred voluntarily retiring or being discharged or demoted.  Kershaw chose not to retire, and he was reassigned to a lower position.  Upon completion of the investigation, Kershaw was advised by letter that he was demoted to License Permit Technician at a lower rate of pay.  Enclosed with the letter were a grievance form and the Montana Administrative Rules setting forth the Board of Personnel Appeals' (BOPA) grievance procedure for MDT employees.  Kershaw resigned in February 2007.

2

¶5     Kershaw did not file a grievance and pursue the procedure before BOPA set forth in §§ 2-18-1001, et seq., MCA.  In April 2008, Kershaw filed a complaint in district court asserting three counts: Count I- wrongful discharge (constructive discharge) without good cause under the WDEA; Count II- wrongful discharge (violation of public policy) under the WDEA; and Count III- intentional infliction of emotional distress (IIED).  MDT filed its Answer in October 2008 and moved for partial summary judgment on Count I, arguing that because Kershaw's discharge claim was subject to the BOPA grievance procedure, it was exempted from the WDEA.  *See* § 39-2-912(1), MCA (the WDEA "does not apply to a discharge . . . subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute").  Kershaw defended, in part, on the ground that the BOPA grievance procedure, if his exclusive remedy, violated his right to equal protection.  In January 2009, the District Court granted partial summary judgment to MDT on Count I, ruling that Kershaw was precluded from bringing his constructive discharge claim under the WDEA and that the BOPA grievance procedure did not violate equal protection.  MDT also moved to dismiss Count II on the ground that it failed to state a claim upon which relief could be granted, and dismissal was stipulated to by Kershaw.  Count III, the IIED claim, remained.

¶6     In April of 2009, Kershaw moved to amend his complaint to include additional tort claims of negligence, libel and slander, and breach of the implied covenant of good faith and fair dealing.  MDT opposed the motion on grounds that Kershaw should not be allowed to change legal theories after a motion for summary judgment was filed because

3

the case did not present extraordinary circumstances, and MDT would be prejudiced by an amendment. The District Court denied Kershaw's motion in May of 2009, and then entered a scheduling order for the remainder of the proceeding, setting November 27, 2009, as the deadline for amendment of pleadings. On February 19, 2010, Kershaw filed a "Renewed Motion for Leave to Amend Pleadings in the Interests of Justice" which largely challenged the conclusions of the May 2009 order denying his motion to amend. Kershaw argued that he did not need to show extraordinary circumstances and that amending the pleadings would not be futile. In April of 2010, the District Court denied Kershaw's Renewed Motion.

¶7 In February of 2010, MDT moved for summary judgment on Count III, arguing inter alia, the IIED claim arose out of Kershaw's employment dispute and was precluded by his failure to pursue the BOPA grievance procedure. Kershaw responded that the grievance procedure was not his exclusive remedy and did not apply to his emotional distress claims, and that granting summary judgment would violate his constitutional rights to equal protection and to a jury trial. In June of 2010, after hearing, the District Court granted MDT's motion.

¶8 Kershaw appeals from the orders granting summary judgment and the orders denying leave to amend his complaint.

**STANDARD OF REVIEW**

¶9 We review a district court's grant of summary judgment de novo, and we apply the criteria outlined in M. R. Civ. P. 56. *Walters v. Flathead Concrete Prods., Inc.*, 2011

4

MT 45, ¶ 8, 359 Mont. 346, 249 P.3d 913 (citing *Alexander v. Bozeman Motors, Inc.*, 2010 MT 135, ¶ 15, 356 Mont. 439, 234 P.3d 880). "Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 12, 349 Mont. 453, 203 P.3d 1283 (citations omitted).

¶10     Our review of constitutional questions is plenary. *Jaksha v. Butte-Silver Bow Co.*, 2009 MT 263, ¶ 13, 352 Mont. 46, 214 P.3d 1248 (citation omitted). "The constitutionality of a statute is a question of law, and we review a district court's legal conclusions for correctness." *Walters*, ¶ 9 (citing *Alexander*, ¶ 16).

¶11     Generally, we review a district court's denial of a motion to amend pleadings to determine whether the district court abused its discretion. *Thornton v. Flathead Co.*, 2009 MT 367, ¶ 14, 353 Mont. 252, 220 P.3d 395 (citing *Peuse v. Malkuch*, 275 Mont. 221, 226, 911 P.2d 1153, 1156 (1996)); *Griffin v. Moseley*, 2010 MT 132, ¶ 22, 356 Mont. 393, 234 P.3d 869 (a district court's decision denying leave to amend is generally reviewed for an abuse of discretion, except for a decision rendered pursuant to M. R. Civ. P. 15(c), which is reviewed de novo). "A district court abuses its discretion when 'it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice.'" *Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2011 MT 51, ¶ 11, 359 Mont. 393, 251 P.3d 131 (citation omitted).

## DISCUSSION

¶12   *1. Did the District Court err by concluding that the preclusion of Kershaw's claim from the WDEA did not violate his constitutional rights to equal protection and to a jury trial?*

¶13   Grievances arising out of the employment of MDT employees are governed by Title 2, Chapter 18, Part 10 of the Montana Code Annotated.  Section 2-18-1001, MCA, provides:

> (1) An employee of the department of transportation *aggrieved by a serious matter of his employment* based upon work conditions, supervision, or the result of an administrative action and who has exhausted all other administrative remedies is entitled to a hearing before the board of personnel appeals, under the provisions of a grievance procedure to be prescribed by the board, for resolution of the grievance.
> (2)  Direct or indirect interference, restraint, coercion, or retaliation by an employee's supervisor or the department of transportation against an aggrieved employee because the employee has filed or attempted to file a grievance with the board shall also be basis for a grievance and shall entitle the employee to a hearing before the board for resolution.
> (3)  *A grievance under this part must be filed with the board of personnel appeals within 180 days after the alleged incident or action occurred. Failure to file the grievance within this period is a bar to proceeding with the grievance.*

Section 2-18-1001, MCA (2005) (emphases added).[1]  The Board of Personnel Appeals "shall hear grievances of personnel of the department of transportation."  Section 2-18-1002(1), MCA.

---

[1] "'We determine the substantive rights between the parties according to the law in effect at the date of injury.'"  *Griffith v. Butte Sch. Dist. No. 1*, 2010 MT 246, ¶ 26, 358 Mont. 193, 244 P.3d 321 (citation omitted).  Kershaw's demotion and alleged constructive discharge took place between the fall of 2006 and February 2007, when the 2005 MCA was in effect.  All subsequent references to the MCA will be to the 2005 version, unless otherwise indicated.

¶14  The WDEA is set forth in Title 39, Chapter 2, Part 9 of the Montana Code Annotated.  Section 39-2-902, MCA, states "[t]his part sets forth certain rights and remedies with respect to wrongful discharge.  Except as provided in 39-2-912, this part provides the exclusive remedy for a wrongful discharge from employment."  Accordingly, § 39-2-912, MCA, provides the following exemptions from the WDEA:

> This part does not apply to a discharge:
>         (1)  that is subject to any other state or federal statute that provides a procedure or remedy for contesting the dispute.  The statutes include those that prohibit discharge for filing complaints, charges, or claims with administrative bodies or that prohibit unlawful discrimination based on race, national origin, sex, age, disability, creed, religion, political belief, color, marital status, and other similar grounds.
>         (2)  of an employee covered by a written collective bargaining agreement or a written contract of employment for a specific term.

¶15  The District Court determined that Kershaw, as a MDT employee, was precluded from filing a WDEA claim because the statutory BOPA grievance procedure provided a remedy for his discharge, and was his exclusive remedy.  While Kershaw took the position before the District Court that the BOPA grievance procedure was *not* his exclusive remedy, citing *Tonack v. Mont. Bank of Billings*, 258 Mont. 247, 854 P.2d 326 (1993) and *Schultz v. Stillwater Mining Co.*, 277 Mont. 154, 920 P.2d 486 (1996), he does not directly challenge on appeal the District Court's contrary holding.  Therefore, despite the context provided by the District Court's ruling, we take no position on whether the BOPA grievance procedure is the exclusive remedy, addressing only the issues argued on appeal.  *See Campanella v. Mont. Dept. of Transp.*, 2007 MT 2, ¶ 8,

7

335 Mont. 212, 156 P.3d 1 (the Court took no position on whether the BOPA grievance procedure was the exclusive remedy, discussing only the issue raised on appeal).

¶16    Kershaw argues that the District Court's preclusion of his WDEA claim "for no other reason than that he is an MDT employee is purely arbitrary and violates his right to equal protection." He argues that his right to equal protection entitles him to a jury trial "because the legislature has provided for such benefit to a particular class of Plaintiffs - those with claims of wrongful discharge."[2]

¶17    Article II, Section 4 of the Montana Constitution provides that "[n]o person shall be denied the equal protection of the laws."[3] The basic premise of equal protection "'is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment.'" *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 15, 353 Mont. 265, 222 P.3d 566 (quoting *Rausch v. State Compen. Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, 114 P.3d 192). The initial step in an equal protection analysis is to identify the classes involved and determine if those classes are similarly situated. *Jaksha*, ¶ 16 (citation omitted). "Thus, to prevail on an equal protection challenge, a party must demonstrate that the state has adopted a classification which

---

[2] Kershaw briefly argues that, assuming the BOPA grievance procedure constitutes his exclusive remedy, his fundamental right to a jury trial has been violated. However, in the District Court, Kershaw raised the jury trial right as a stand-alone challenge only in the context of his IIED claim. Thus, we do not address Kershaw's challenge to the BOPA procedure on that ground. Regarding the IIED claim, Kershaw takes the position on appeal that while "his claim for intentional infliction of emotional distress does not, by itself, implicate his right to a jury trial," his libel claim does, providing reason he should have been granted leave to amend his complaint to add additional claims. We address the amendment issue later in the opinion.

[3] Kershaw relies on only the Montana Constitution for his equal protection arguments, and thus, we do not address the U.S. Constitution.

8

discriminates against individuals similarly situated by treating them differently on the basis of that classification. If the classes are not similarly situated, then the first criterion for proving an equal protection violation is not met, and it is not necessary for us to analyze the challenge further." *Rausch*, ¶ 18 (internal citation omitted).

¶18 The District Court noted that Kershaw's position was that "MDT employees comprise a classification of people that are treated differently than employees of other agencies and companies which are covered by the WDEA." In his opening brief on appeal, Kershaw identifies the classes as "MDT employees as opposed to all other *non-union* employees" and, later, as "MDT employees *versus all other* employees." (Emphases added.) In his reply brief, Kershaw offers that the classes are MDT employees versus "other employees who are clearly covered by the WDEA . . . ." While Kershaw fails to articulate consistent class definitions, we gather from his arguments, for purposes of this case, that the class identifications are MDT employees who are exempted from the WDEA and employees who are not exempted from the WDEA. We thus consider whether these classes are similarly situated.

¶19 In *Powell v. State Compen. Ins. Fund*, 2000 MT 321, 302 Mont. 518, 15 P.3d 877, the claimant challenged a statutory limit on domiciliary care benefits provided by family members on equal protection grounds. *Powell*, ¶¶ 14-15. We identified the classes as family member caregivers who are subject to the limitation on compensation versus non-family member caregivers who are not subject to the limitation on compensation. *Powell*, ¶ 23. We concluded that the classes were not similarly situated, noting that

9

family member caregivers often provide types of care that may have been provided prior to the accident; family member caregivers often provide passive supervision while able to pursue other activities, while non-family member caregivers usually provide care as a full-time job away from the home; and family member caregivers typically provide care on a lower skill level than non-family member, professional caregivers. *Powell*, ¶¶ 24-26. Similarly, in *Rausch,* we concluded that the class of permanently totally disabled claimants was not similarly situated to the class of permanently partially disabled claimants. *Rausch*, ¶ 25.

¶20 As in *Powell* and *Rausch*, we conclude that Kershaw has not carried his burden of demonstrating that the classes are similarly situated. First, as MDT argues, Kershaw's broad characterization of the classes—MDT employees versus employees with access to the WDEA—fails to recognize distinctive statutory employee remedies which exist alongside the WDEA, and apply to groups other than MDT employees. The WDEA does not provide remedies to employees covered by a written collective bargaining agreement, § 39-2-912(2), MCA; to employees having a written employment contract for a specific term, § 39-2-912(2), MCA; or to employees covered by another state or federal statute which provides a procedure or remedy for contesting the dispute, including those "that prohibit discharge for filing complaints, charges, or claims with administrative bodies or that prohibit unlawful discrimination," such as the Montana Human Rights Act. Section 39-2-912(1), MCA; *see* § 49-2-512(1), MCA (2007); *see also Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 27, 323 Mont. 453, 100 P.3d 987 (the Human Rights Act is the exclusive

10

remedy for claims of sexual discrimination in employment); *Vettel-Becker v. Deaconess Med. Ctr. of Billings, Inc.*, 2008 MT 51, ¶ 37, 341 Mont. 435, 177 P.3d 1034 (allowing WDEA wrongful discharge claim where it was *not* based on underlying allegations of discrimination). Highway patrol officers also have a statutory remedy for disciplinary matters. *See* §§ 44-1-701, et seq., MCA (2009); § 44-1-806(2), MCA (2009) ("A discharge after a hearing is exempt from the Wrongful Discharge From Employment Act as provided in 39-2-912.").[4]

¶21 Further, the remedies available to the identified classes vary in scope and in the nature of the rights provided. "By its own terms, the [WDEA] 'sets forth certain rights and remedies with respect to wrongful discharge . . . .'" *Kneeland v. Luzenac Am., Inc.*, 1998 MT 136, ¶ 26, 289 Mont. 201, 961 P.2d 725 (quoting § 39-2-902, MCA); *see also Beasley v. Semitool, Inc.*, 258 Mont. 258, 262, 853 P.2d 84, 86 (1993). The WDEA permits damage awards for lost wages and fringe benefits for up to four years with interest, deducts interim earnings from the amount awarded for lost wages, § 39-2-905(1), MCA, and limits theories for additional damages, such as emotional distress. Section 39-2-905(3), MCA. In contrast, a MDT employee who is "aggrieved by a serious matter of his employment based upon work conditions, supervision, or the result of an administrative action" may proceed before BOPA, and is thus entitled to broadly challenge employment issues, including those that arise from discharge, pre-discharge, or other "serious" employment matters. Section 2-18-1001(1), MCA. We have stated that

---

[4] Section 44-1-806(2), MCA, was amended in 2009 to make explicit the exemption from the WDEA.

BOPA has "full jurisdiction to determine all the issues relating to the termination" of a MDT employee. *Niles v. Carl Weissman & Sons, Inc.*, 241 Mont. 230, 236, 786 P.2d 662, 666 (1990). Regarding remedy, the Board of Personnel Appeals is authorized to enter an order "to require an action by [MDT] to resolve the employee's grievance." Section 2-18-1002(2), MCA.

¶22 "'The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt.'" *Walters*, ¶ 32 (quoting *Powell*, ¶ 13). The party challenging a statute's constitutionality carries the burden of proving that the statute is unconstitutional beyond a reasonable doubt. *Walters*, ¶ 32 (citing *Satterlee*, ¶ 10). "If there is any doubt as to constitutionality, the resolution must be made in favor of the statute." *Walters*, ¶ 32 (citing *Satterlee*, ¶ 10).

¶23 Kershaw has not demonstrated that the state has created two similarly situated classes which are treated differently, and his equal protection argument fails. He concludes by urging that "§39-2-912, MCA is unconstitutional as applied," but does not reconcile this argument with the District Court's determination that the statutes in question were §§ 2-18-1001, et seq., MCA, which were constitutional for equal protection purposes. We conclude that Kershaw has not met his burden of proving the statutes are unconstitutional.

12

¶24   *2.  Did the District Court abuse its discretion in denying Kershaw's motions for leave to amend the complaint?*

¶25   M. R. Civ. P. 15(a) provides that "'leave [to amend] shall be freely given when justice so requires.'"  *Farmers Coop. Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 12, 339 Mont. 445, 171 P.3d 690 (quoting M. R. Civ. P. 15(a)).  However, "this does not mean that a court must automatically grant a motion to amend."  *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544 (citation omitted).  Instead, the decision to grant or deny a motion to amend is within the district court's discretion.  *Farmers Coop. Ass'n*, ¶ 12 (citation omitted).

¶26   The District Court denied Kershaw's first Motion to Amend in May of 2009, noting that Kershaw's motion was filed almost one year after his complaint was filed, and after partial summary judgment had already been briefed and granted to MDT on one of the wrongful discharge claims.  The District Court determined that Kershaw did not show good cause or provide any extraordinary circumstances to warrant amending the complaint.  The District Court also found that the additional tort claims Kershaw sought to add arose out of his employment dispute with MDT, and therefore, appeared to be futile due to his failure to follow the MDT grievance procedure set out in §§ 2-18-1001, et seq., MCA.  In April of 2010, the District Court denied Kershaw's Renewed Motion to Amend.  The District Court found that Kershaw's Renewed Motion was untimely because it had been filed months after the deadline for amendment of pleadings in the scheduling order, and that his brief in support of his Renewed Motion to Amend was untimely filed under Uniform District Court Rule 2(b).  While the Court determined it

13

could deny Kershaw's Renewed Motion on those grounds alone, the Court also concluded that Kershaw's "extraordinary circumstances" argument was untimely and that his proposed new claims were inextricably linked to his employment dispute and, thus, were futile due to his failure to grieve the claims.

¶27 Kershaw contests the District Court's timeliness determinations. He argues that the requirement to demonstrate extraordinary circumstances for amendments after a motion for summary judgment has been filed, pursuant to *Peuse*, 275 Mont. at 228, 911 P.2d at 1157, should not have been applied to him. He also argues that the District Court's determination that his new claims would be futile was also incorrect, as his IIED claim was still pending at that point; futility was not an appropriate basis to deny his motion; and he still may have been able to establish the viability of his new constitutional claims premised on the right to a jury trial.

¶28 The District Court denied, for multiple reasons, Kershaw's motions to amend pleadings made during the course of proceedings that had advanced to summary judgment stage. We deem it unnecessary to dissect the District Court's references to "extraordinary circumstances" and "futility," particularly where it reasoned that untimeliness alone justified denial of the Renewed Motion to Amend, and was a factor in the denial of the first Motion to Amend. As pointed out by MDT, Kershaw's proposed new tort claims were available to him from the beginning. Kershaw's briefing in support of amendment in the District Court essentially acknowledged that he had held back on claims for strategic reasons:

14

[Kershaw] actually anticipated that [MDT] would move to dismiss on his tort claim pursuant to §39-2-905, MCA. [Kershaw] *strategically included* the emotional distress claims "just in case" . . . .

When [MDT] instead moved for summary judgment on the Wrongful Discharge Act claim itself, based on his failure to pursue a grievance under §2-18-1001, MCA, it became necessary for him to amend the pleadings to add other claims not premised under the Wrongful Discharge Act in order to fully advance *the claims he possessed* that no longer appeared to be barred by the wrongful discharge act.

(Emphases added.) We cannot conclude that the District Court abused its discretion under these circumstances.

¶29 Affirmed.


/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

15