No. 99-429

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 299

302 Mont. 326

15 P.3d 1179

MICHAEL J. MAY, MARILYN D. MAY,

and MYRNA MAY,

Plaintiffs and Appellants,

v.

ERA LANDMARK REAL ESTATE OF

BOZEMAN and SUE FRYE,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael J. San Souci, Law Office of Michael J. San Souci,

Bozeman, Montana

For Respondents:

Michael J. Lilly, Berg, Lilly, Andriolo & Tollefsen,

Bozeman, Montana

Submitted on Briefs: November 18, 1999
Decided: December 4, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiffs, Michael J. May, Marilyn D. May, and Myrna May, brought this action in the District Court for the Eighteenth Judicial District in Gallatin County alleging eight claims for relief arising from the sale of Plaintiffs' real property through the agency of the Defendants, ERA Landmark Real Estate ("ERA") of Bozeman and Sue Frye, an individual real estate agent employed by ERA. The Defendants filed a counterclaim in which they sought damages for breach of the listing agreement by failure to pay their real estate commission. The District Court awarded summary judgment to the Defendants, dismissed Plaintiffs' eight claims for relief and awarded damages and attorney fees to the Defendants pursuant to their counterclaim. The Plaintiffs appeal the award of summary judgment by the District Court. We affirm in part and reverse in part.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it granted Defendants' motion for summary judgment and dismissed Plaintiffs' claims 1 through 8?

¶4 2. Did the District Court err when it granted Defendants' motion for summary judgment and awarded damages and attorney fees to the Defendants based on Defendants' counterclaim?

## FACTUAL BACKGROUND

¶5 On October 1, 1993, Plaintiffs Michael and Marilyn May, for themselves and on behalf of Mr. May's mother, Myrna, entered into a Standard Listing Contract with Defendants, Sue Frye and ERA. The listed property, located at 915 East Main Street, in the city of Bozeman, Montana, had been owned and operated by the Plaintiffs as a commercial service station and automobile repair facility. The exclusive listing agreement provided that the property was to be listed for the price of $195,000, and the Defendants would be paid a 7 percent commission for any sale of the property. The Plaintiffs contend that the Defendants understood that the Plaintiffs would only sell the property "as is"and would not assume tank removal expenses or toxic cleanup costs.

¶6 On or about March 18, 1994, Frye telephoned Mr. May and advised him that a local businessman, Harry Huntsinger, and his partners, the Huntsinger Group, had submitted an offer of $175,000. Mr. May rejected the offer.

¶7 According to Mr. May's deposition testimony, approximately four days later, on March 22, 1994, Frye met with Mr. May in person at the gas station and presented another offer to purchase the property by Huntsinger. The terms of this second offer included a purchase price of $185,000, obligated the Plaintiffs to remove the fuel tanks and pumps, and required the Plaintiffs to indemnify the purchaser against any toxic litigation. Mr. May expressly rejected the offer for being too low and for exposing Plaintiffs to cleanup liability. According to Mr. May's deposition testimony, Frye then requested that Mr. May initial the second offer to acknowledge that he had received the offer. Mr. May complied and placed his initials, MM, on the "seller signature" line.

¶8 Mr. May additionally testified in his deposition that on March 24, 1994, Frye telephoned him, at which time he confirmed that he would only accept the full list price of $195,000, and only sell the property as is. Frye returned to the gas station later that day with a standard form counteroffer which included the following form language:

> Having considered the said offer, but not being satisfied therewith, the undersigned seller hereby makes the following counter-offer and agrees to accept and consummate the sale of said property for the price and on terms and conditions as follows:

Frye had added the following typed words below the form language:

> Purchase price to be $195,000. Seller is willing to carry up to $20,000 interest free,

with monthly payments of $1,000 until balance is paid.

Following approximately three inches of blank lines, the form language states that "[a]ny part of purchaser's original written offer not hereinabove changed, altered or modified hereby is approved and accepted by the seller . . . ." The seller signature line is found immediately below that language.

¶9 In his deposition, Mr. May testified that Frye represented to him that she would draft a counteroffer with a sale price of $195,000 and no cleanup obligation. Mr. May testified that he was unsure whether he read the entire counteroffer, but that based on Frye's knowledge of the express terms that he would require, he signed the counteroffer.

¶10 Mr. May also testified in his deposition that at the time Frye had him initial the rejected $185,000 offer, there was no date, nor any reference to "see counter attached," and that the only thing he added to the $185,000 offer was his initials MM. However, at some time prior to Huntsinger's acceptance of the counteroffer, the date "March 24, 1994" and the words "see counter attached" were affixed immediately preceding Mr. May's initials on the $185,000 offer.

¶11 Frye telephoned Mr. May later that day and informed him that Huntsinger had accepted the counteroffer. Mr. May testified in his deposition that it was not until he contacted his attorney, Bill Madden, to draft a contract for sale of the property, that he was informed that the terms of the counteroffer incorporated the unaltered terms of the $185,000 offer and that, as a result, he was liable for the toxic cleanup, including removal of the tanks. Following several communications between Madden and Huntsinger, May and Madden agreed that the Mays' failure to abide by the terms in the counteroffer would subject them to a breach of contract action by Huntsinger. The Mays agreed to abide by the terms of the counteroffer, and advised the Defendants that recourse would then be sought against them. The Plaintiffs subsequently closed the sale on September 22, 1994.

¶12 On January 22, 1996, the Plaintiffs filed a complaint which alleged eight claims for relief, including: fraud, breach of contract, breach of fiduciary duty, bad faith, intentional infliction of emotional distress, negligent misrepresentation, professional negligence, and negligent infliction of emotional distress.

¶13 On March 12, 1996, the Defendants filed an answer and counterclaim which sought damages for breach of the listing agreement for refusal to pay the 7 percent real estate

commission.

¶14 Following extensive discovery, the Defendants moved the District Court to dismiss all eight of Plaintiffs' claims for relief by summary judgment. On September 18, 1998, the District Court granted Defendants' motion for summary judgment in its entirety.

¶15 On October 2, 1998, the Defendants moved for summary judgment on their counterclaim, and requested attorney fees pursuant to the provisions of the listing agreement.

¶16 On March 3, 1999, the District Court granted the Defendants' motion for summary judgment, and awarded damages and attorney fees.

## STANDARD OF REVIEW

¶17 Our standard of review on appeal from summary judgment orders is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Motarie*, 274 Mont. at 242, 907 P.2d at 156.

## DISCUSSION

## ISSUE 1

¶18 Did the District Court err when it granted Defendants' motion for summary judgment and dismissed Plaintiffs' claims 1 through 8?

## Fraud

¶19 The Plaintiffs contend that the District Court erred when it dismissed their cause of action for fraud by summary judgment.

¶20 The Defendants assert that the Plaintiffs have failed to allege in their complaint or produce any evidence of a misrepresentation of material fact or that Plaintiffs justifiably

relied upon a misrepresentation by the Defendants, both of which are required elements to prove fraud.

¶21 To survive a motion for summary judgment, a party alleging fraud must establish a prima facie case by providing evidence of the following elements:

1. a representation;

2. its falsity;

3. its materiality;

4. the speaker's knowledge of its falsity or ignorance of its truth;

5. the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated;

6. the hearer's ignorance of its falsity;

7. the hearer's reliance upon its truth;

8. the right of the hearer to rely upon it; and

9. the hearer's consequent and proximate injury or damage.

*Stanley v. Holms*, 1999 MT 41, ¶ 33, 293 Mont. 343, ¶ 33, 975 P.2d 1242, ¶ 33.

¶22 Our review of the record reveals that there is sufficient evidence of a misrepresentation of a material fact and justifiable reliance upon that fact to survive a motion for summary judgment. Mr. May testified to the following in his deposition:

> She [Frye] brought this offer in, showed it to me. I told her that I wasn't interested in any offer less than the listing price. . . . I told her the price didn't come up to what I was asking for. I wouldn't have anything to do with the indemnification against the toxicity. It was an "as-is" which it had been from the beginning. And I scolded her. And I told her, "Don't bring me this stuff. I'm not interested in anything but what I'm asking." And she said, "Well, I'm obliged to bring you all offers." I said, "Fine, Sue, you brought me the offer. I'm not interested." *And she told me to acknowledge that I*

*had this offer by initialing it, which is what I did.*

(Emphasis added.)

¶23 Additionally, the Plaintiffs' Complaint sets forth the following allegation in its section entitled: Facts Common to All Counts:

At the conclusion of the above-described meeting, Defendant Frye requested that Plaintiff May initial the bottom of the rejected offer, purportedly for acknowledgment purposes only. Defendant Frye apprised Plaintiff May that "I'm obliged to bring all offers," and that he was required to "initial here to acknowledge that you've seen this," or words to that effect. As a consequence thereof, Plaintiff had unwittingly placed his initials on the "Seller Signature" line and, shortly thereafter, Defendants had written in above Plaintiff May's initials the date of March 24, 1994, and the notation "see counter attached" . . . . In so doing, Defendants intended to incorporate by reference a new counteroffer, dated March 24, 1994, containing the $195,000.00 purchase price while, at the same time, retaining the tank removal and toxic cleanup liability specified in the buyers' March 22, 1994 offer.

¶24 The Plaintiffs' Complaint further alleges the following:

Plaintiffs were ignorant of Defendants' undisclosed intentions, and justifiably relied upon Defendants' express promises and representations that they would deal honestly and fairly with Plaintiffs, and act in their best interests. Plaintiffs could not, in the exercise of reasonable diligence, have discovered Defendants' true intentions in procuring either their consent to extend the listing agreement, or their initials on the unaccepted counteroffer.

¶25 Frye testified in her deposition that she asked Mr. May to initial the $185,000 offer at the same time she had him sign the counteroffer, on March 24, 1994, and that she wrote the words "see counter attached" in front of Mr. May and then he initialed the document.

¶26 The Plaintiffs have presented sufficient evidence of fraud to survive a motion for summary judgment. The Plaintiffs presented evidence of a misrepresentation of a material fact, when according to Mr. May, Frye told him to initial the offer for acknowledgment

purposes only. Mr. May presented evidence of his justifiable reliance upon that misrepresentation when he initialed the offer based on Frye's misrepresentation. His reliance would have been justified based upon the relationship that Frye had with Mr. May as his real estate agent. Moreover, the factual differences in the deposition testimony of Mr. May and Frye clearly set forth a genuine issue of material fact which precludes disposition of this issue by summary judgment.

¶27 Therefore, we conclude that the Plaintiffs have established sufficient evidence of the nine elements of fraud to survive the Defendants' motion for summary judgment. Accordingly, we reverse the District Court's dismissal of the Plaintiffs' fraud claim by summary judgment.

## Breach of Contract

¶28 The Plaintiffs assert that the District Court erred when it dismissed their claim for breach of contract. The Plaintiffs contend that the Defendants breached the duties set forth in the Disclosure Statement attached to the Standard Listing Contract dated October 1993.

¶29 In response, the Defendants contend that the Plaintiffs have identified no explicit provision in the Standard Listing Contract which the Defendants have breached. Rather, the Defendants point out that the duties the Plaintiffs claim were allegedly breached by the Defendants are merely affirmative obligations set forth in the document entitled: "Disclosure Regarding Types of Real Estate Agency Relationships Available."

¶30 Our review of the Standard Listing Contract and the Disclosure document reveals that there is no reference in the Standard Listing Contract to the Disclosure document, nor is there any reference in the Disclosure document to the Standard Listing Contract. Standing alone, the Disclosure document is not a contract between the Plaintiffs and the Defendants; it is simply a disclosure of the different duties owed by a real estate agent to the respective buyer or seller.

¶31 Section 28-2-102, MCA, sets forth the necessary elements of a contract. It provides as follows:

It is essential to the existence of a contract that there be:

(1) identifiable parties capable of contracting;

(2) their consent;

(3) a lawful object; and

(4) a sufficient cause or consideration.

Because this document was merely a disclosure of the duties of a seller's agent, and did not require any additional consideration, failure to adhere to the duties as prescribed in the Disclosure document did not constitute a breach of contract.

¶32 Plaintiffs additionally claim that the terms in the Standard Listing Contract which state: "Broker is employed to find a buyer ready and willing to acquire the property . . . at the price and terms stated above or at such other price and terms as seller accepts," and "Broker represents Seller's interests in marketing the property . . . ." were also breached by the Defendants.

¶33 In response, the Defendants assert that the Plaintiffs were required to prove that there was a breach of a specific contractual provision in the Standard Listing Contract and that the Plaintiffs have failed to do so.

¶34 Defendants rely on *Northern Montana Hospital v. Knight* (1991), 248 Mont. 310, 811 P.2d 1276, in which we stated:

> In a case that concerns the breach of a professional service contract, it is oftentimes difficult to determine whether the claims are strictly tortious or strictly contractual. The rule in such circumstances is that if the claims are based upon breach of specific provisions in the contract, the action sounds in contract . . . .

*Northern Montana Hosp., 248 Mont. at 315, 811 P.2d at 1278 -79.*

¶35 We agree with the Defendants' characterization that the Plaintiffs must prove that the Defendants breached a specific provision in the Standard Listing Contract in order to prove a breach of the contract. However, we disagree with the Defendants' assertion that the Plaintiffs have failed to do so. The specific provisions of the Standard Listing Contract alleged to have been breached by the Defendants includes the following provision: "broker is employed to find a buyer ready and willing to acquire the property . . . at the price and terms stated above or at such other price and terms as seller accepts." Our review of the

record reveals that there is sufficient evidence of a breach of that specific provision in the Standard Listing Contract to survive a motion for summary judgment. If the Plaintiffs were induced to execute the buy-sell agreement under the assumption that the buyer was going to purchase the property based on the price and terms in the listing agreement, and that was not done, as alleged by the Plaintiffs, then the Defendants may be liable for a breach of contract.

¶36 Accordingly, we conclude that the District Court erred when it dismissed the Plaintiffs' claim for breach of contract.

## Breach of Fiduciary Duties

¶37 The Plaintiffs contend that the District Court erred when it dismissed their claim for breach of fiduciary duties. The Plaintiffs argue that our holding in *Durbin v. Ross* (1996), 276 Mont. 463, 916 P.2d 758, makes it clear that they may allege and can "ultimately sustain, *prima facie* claims for fraud, negligent misrepresentation and any related common law claims . . . ." and "presumably, this could logically include a claim for breach of fiduciary duties, as well."

¶38 The Defendants assert that the District Court was correct in concluding that the Plaintiffs' claim for breach of fiduciary duties, was, in reality, a claim for professional negligence and was therefore repetitious of the Plaintiffs' claim for professional negligence. The Defendants additionally contend that there is no recognized cause of action in Montana for breach of fiduciary duty, nor was one created by our holding in *Durbin*.

¶39 In *Durbin*, the Plaintiffs asserted five separate claims for relief against the Defendant real estate broker, including actual fraud, constructive fraud, negligent misrepresentation, violation of the Montana Real Estate Licensing Act, and violation of the Montana Consumer Protection Act. The Plaintiffs in that case did not allege, nor was there any discussion, of a claim for breach of fiduciary duty.

¶40 The Plaintiffs' Complaint sets forth the following allegation to support their claim for professional negligence:

> In holding themselves out as real estate professionals committed to the best interests of Plaintiffs, the ERA Defendants affirmatively represented that they would provide

"professional service of the highest quality," and Defendants held themselves out as having particular skills and knowledge in the field of commercial real estate sales and service. As set forth under the applicable section of the Montana Professions & Occupations Code, and as expressly represented in the parties' listing agreement, Defendants had an affirmative obligation of "utmost care" and the "diligent exercise of reasonable skill and care in performance of [their] duties."

In doing all of the things hereinabove alleged, including committing Plaintiffs to a purchase contract which would be financially disadvantageous to them, Defendants negligently, carelessly and recklessly breached their duties of utmost care and skill in the performance of said duties, including the drafting of inaccurate contract documents and miscommunications and/or mistakes in transmittals among Plaintiffs and the prospective buyers.

¶41 The Plaintiffs' Complaint sets forth the following allegation to support their claim for breach of fiduciary duties:

As set forth under the applicable section of the Montana Professions & Occupations Code, and as expressly provided in the parties' listing agreement, Defendants' affirmative obligations included "a fudiciary [sic] duty of utmost care, integrity, honesty, and loyalty in dealings" with Plaintiffs, as the sellers of the commercial property in question.

In doing all of the things hereinabove alleged, Defendants, and each of them, have unequivocally breached their fudiciary [sic] duties owed to Plaintiffs.

¶42 While the Plaintiffs' allegation of breach of fiduciary duties does not set forth the specific facts on which the alleged breach is based, it is clear from the record that the alleged breach is based on the drafting of the offers and the communications between the Plaintiffs and the Defendants. The Plaintiffs' allegations of professional negligence, fraud, negligent misrepresentation, and bad faith are also based upon the same facts. Therefore, Plaintiffs' claim for breach of fiduciary duty is repetitious of other parts of their complaint and adds nothing to their claims for relief.

¶43 Accordingly, because we conclude that the Plaintiffs' claim for breach of fiduciary duties is repetitious of the Plaintiffs' other claims, we further conclude that the District Court did not err when it dismissed the Plaintiffs' claim by summary judgment.

## Breach of Covenant of Good Faith

¶44 The Plaintiffs contend that the District Court erred when it dismissed their claim for breach of the implied covenant of good faith and fair dealing. The Plaintiffs argue that, based on this Court's holding in *Durbin*, no expert testimony is required to establish reasonable commercial standards in order to sustain a claim for breach of the covenant of good faith and fair dealing.

¶45 The District Court concluded that "reasonable commercial standards" are not within the common knowledge of a lay person, and that as a result, expert testimony is mandated. The District Court further concluded that because the Plaintiffs failed to produce any evidence to suggest that the Defendants breached the covenant of good faith and fair dealing, the Defendants' motion for summary judgment should be granted.

¶46 In *Durbin*, the Durbins argued that a layperson could determine whether a broker had violated the regulations set forth in the Montana Real Estate Licensing Act because the determination required no special knowledge since the specific standards of conduct were set forth in the statute. Accordingly, in *Durbin* we held the following:

> [T]he provisions of the Real Estate Licensing Act establish a standard of conduct to which brokers and salespersons must conform. If not, they must bear the consequences. Accordingly, in the instant case, expert testimony was not required because a jury may determine whether the Realtors violated any of the provisions in the regulations or statutes.

*Durbin*, 276 Mont. at 476, 916 P.2d at 766.

¶47 The implied covenant of good faith and fair dealing is set forth in § 28-1-211, MCA, and provides that "[t]he conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

¶48 In *Crenshaw v. Bozeman Deaconess Hospital* (1984), 213 Mont. 488, 693 P.2d 487, we held that expert testimony on the issue of reasonable commercial standards, as contemplated by the implied covenant of good faith and fair dealing, was proper. The rationale for our holding in *Crenshaw* was as follows:

Fault arising from breach of implied covenant of good faith and fair dealing is not easily comprehensible to the average person. [The expert's] testimony was based on professional expertise and experience which the individual jury members were unlikely to possess. Her testimony assisted the trier of fact by providing the jury with information and a prospective [sic] beyond the common experience of a lay juror.

*Crenshaw, 213 Mont. at 502, 693 P.2d at 494.*

¶49 However, if the duty requires both honesty and commercially reasonable conduct, then it follows that the duty can be breached by either dishonesty <u>or</u> commercially unreasonable conduct. There is no requirement that both be proven. Furthermore, as we held in *Durbin*, it does not require expert testimony to prove dishonesty, and it follows that if there is sufficient evidence to submit the issue of fraud to a finder of fact, there is sufficient evidence of dishonesty to submit the issue of bad faith to the finder of fact.

¶50 Therefore, we conclude that the District Court erred when it dismissed Plaintiffs' claims for breach of the covenant of good faith and fair dealing by summary judgment.

### Negligent and Intentional Infliction of Emotional Distress

¶51 The Plaintiffs assert that the District Court erred when it dismissed their claims for negligent and intentional infliction of emotional distress. While the Plaintiffs acknowledge that the severity of the alleged emotional distress is generally a threshold determination to be made by the court pursuant to *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411, the Plaintiffs contend that the District Court disregarded testimony that the Mays suffered serious financial hardship and stress related to their financial difficulties.

¶52 The Defendants assert that, in light of the undisputed facts that the Mays have not listed any healthcare professional to testify to their mental distress, the stress has not prevented Mr. May from pursuing his love of fishing, and Marilyn May's testimony that although the transaction was stressful, neither she nor her husband ever felt it necessary to seek medical help, the District Court was correct when it dismissed the claims for emotional distress by summary judgment.

¶53 We have previously held that an independent cause of action for infliction of

emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission. *See Sacco*, 271 Mont. at 238, 896 P.2d at 429.

¶54 Recently, in *Maloney v. Home and Investment Center, Inc.*, 2000 MT 34, 57 St. Rep. 144, 994 P.2d 1124, we discussed the "serious or severe" requirement for actionable emotional distress. In *Maloney*, we discussed the standard for determining "serious or severe" as set forth by the Restatement (Second) of Torts § 46 comment j:

> [Emotional distress] includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

*Maloney, ¶ 62.*

¶55 We also stated in *Maloney* that "[m]easuring this element requires a careful consideration of the circumstances under which the infliction occurs, and the party relationships involved, in order to determine when and where a reasonable person should or should not have to endure certain kinds of emotional distress." *Maloney*, ¶ 63. Moreover, we recognized that, "[a]lthough this Court has never directly held so, emotional distress damages resulting from purely economic loss in non-contractual matters are rarely compensated . . . . " and this notion stems from the fact that "in the world of business transactions most all emotional distress is of the transient and trivial variety." *Maloney*, ¶ 66.

¶56 Our review of the record reveals that the evidence of emotional distress presented to the District Court in opposition to the Defendants' motion for summary judgment was minimal, at best. Mrs. May testified to the following in her deposition:

> Q. Has the way this transaction transpired or unfolded been stressful for you?

> A. Yes.

Q. Okay. Has it been stressful to the point where you have sought medical help?

A. No.

Q. Has it been stressful for your husband?

A. Yes.

Q. Has it been stressful to the point where he sought medical help?

A. No.

Q. Has it interfered with his fishing?

A. Oh, absolutely.

Q. And how's that?

A. You have to spend your time, you know, at the station. You know, you have no free time. You've got to be there, and you've got a lot of work to do, you've got a lot of phone calls. There were a lot of phone calls made from our home late in the evening because of trying to contact people who weren't available through the day. So it went home with us as well as at work.

¶57 While there is no requirement that a plaintiff present expert or medical testimony of emotional distress, some evidence of serious or severe emotional distress is necessary to survive a motion for summary judgment. Here, Mrs. May's testimony that extra work was required of the Mays as a result of the toxic liability and gas tank removal is not sufficient evidence of serious or severe emotional distress to preclude summary judgment. Accordingly, we conclude that the District Court did not err when it dismissed the Plaintiffs' claims for negligent and intentional emotional distress.

## Negligent Misrepresentation

¶58 The Plaintiffs assert that they have alleged a prima facie claim of negligent misrepresentation. Accordingly, the Plaintiffs contend that the District Court erred when it dismissed their claim for negligent misrepresentation by summary judgment.

¶59 In response, the Defendants assert that the Plaintiffs have failed to set forth any evidence of a misrepresentation of fact by the Defendants.

¶60 This Court has long recognized the common law tort of negligent misrepresentation. *See Jackson v. State*, 1998 MT 46, ¶ 36, 287 Mont. 473, ¶ 36, 956 P.2d 35, ¶ 36. In *Jackson*, we set forth the following elements of a claim for negligent misrepresentation:

> a. the defendant made a representation as to a *past or existing* material fact;

> b. the representation must have been untrue;

> c. regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

> d. the representation must have been made with the intent to induce the plaintiff to rely on it;

> e. the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

> f. the plaintiff, as a result of its reliance, must sustain damage.

*Jackson, ¶ 36.*

¶61 We have also approved the definition of negligent misrepresentation as set forth in Restatement (Second) of Torts § 552, which provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See Durbin, 276 Mont. at 472, 916 P.2d at 764.*

¶62 The District Court awarded summary judgment to the Defendants on the issue of negligent misrepresentation for the same reason it awarded summary judgment on the issue of fraud, stating:

> The proof Plaintiffs must produce to support this claim is almost identical to the proof they must submit to establish a claim of fraud . . . . There is no proof that the Defendants supplied false information to the Plaintiffs.

¶63 However, as previously discussed, our review of the record reveals evidence that Frye told Mr. May that he should initial the rejected $185,000 offer to acknowledge that she had presented him with the offer, and then incorporated rejected portions of the offer in the counteroffer without his knowledge. That evidence was evidence of misrepresentation of a material fact. Accordingly, we conclude that the Plaintiffs' claim for negligent misrepresentation should not have been dismissed by summary judgment, and that the District Court erred when it did so.

## Professional Negligence

¶64 The Plaintiffs contend that the District Court erred when it dismissed their claim for professional negligence by summary judgment. The Plaintiffs assert that, pursuant to *Durbin,* no expert testimony is required to establish the standard of care of a real estate agent.

¶65 The Defendants assert that expert testimony is necessary in this case to establish a breach of the applicable standard of care. The Defendants argue that because no real estate broker was listed as an expert witness by the Plaintiffs, the Plaintiffs have thereby failed to provide the court with any expert testimony regarding the issues of duty and breach of a duty in the real estate profession, which precludes the Plaintiffs from prevailing on their claim of professional negligence.

¶66 We have held that to prove a professional negligence claim, the plaintiff must prove that the professional owed him a duty, and that the professional failed to live up to that duty, thereby causing damages to the plaintiff. *See Durbin,* 276 Mont. at 472, 916 P.2d at 763.

¶67 Plaintiffs' reliance on *Durbin* for the proposition that expert testimony is not required in a professional negligence claim is misplaced. In *Durbin*, we stated the following:

The Durbins do not dispute that, were they pursuing a professional negligence claim against their own broker, they would need to produce expert standard of care testimony. They do not assert a professional negligence claim because the Realtors did not represent the Durbins in a professional capacity. Instead, the Durbins assert common law and statutory fraud theories of recovery which do not require proof of the standard of conduct exercised by other brokers.

*Durbin*, 276 Mont. at 469, 916 P.2d at 761-62.

¶68 In *Newville v. State Department of Family Services* (1994), 267 Mont. 237, 257, 883 P.2d 793, 805, we stated that:

It is the rule in Montana that expert testimony is required as to the standard of care, and as to the professional's violation of that standard of care, before a trier of fact may find such professional negligent.

The rationale for requiring expert testimony to establish a standard of care for professionals acting in their professional capacity is that such professionals are required to possess a minimum standard of special knowledge and ability, and as a result juries which are composed of laypersons are normally incompetent to pass judgment on such questions without the assistance of expert testimony.

¶69 Alternatively, the Plaintiffs argue that their claim for professional negligence was, in reality, a claim for breach of express statutory standards of conduct, as set forth in the Montana Professions & Occupations Code, §§ 37-51-101 et seq., MCA, which sets forth the duties of real estate brokers and salespersons. However, as pointed out by the Defendants, § 37-51-313, MCA, which provides express duties of a real estate agent to the buyer and seller was not enacted until 1995, and no similar provision was in effect in 1994 at the time of this transaction. Therefore, the Plaintiffs may not rely on this section of the code to provide express duties in this case.

¶70 We conclude that the Plaintiffs' claim for professional negligence required the submission of expert testimony to prove the standard of care of a real estate broker. Accordingly, we further conclude that the District Court did not err when it dismissed the Plaintiffs' claim of professional negligence.

## ISSUE 2

¶71 Did the District Court err when it granted Defendants' motion for summary judgment and awarded damages and attorney fees to the Defendants based on Defendants' counterclaim?

¶72 The Defendants' counterclaim alleged a breach of the Standard Listing Contract entered into by the parties, specifically, the failure to pay the required real estate commission. The Plaintiffs' defense to the Defendants' counterclaim was based on the Plaintiffs' claim that the Defendants materially breached the Standard Listing Contract and therefore no performance was required by the Plaintiffs following the Defendants' material breach. The District Court granted summary judgment on the Defendants' counterclaim, and awarded damages equal to the 7 percent commission required and attorney fees as provided for the prevailing party in the Standard Listing Contract.

¶73 Although neither party has separately briefed the counterclaim issue, we conclude it is inseparable from the breach of contract claim which we have remanded for resolution of factual issues. Therefore, summary judgment for the Defendants on their counterclaim is also reversed. The issues raised by the counterclaim are to be considered in combination with the factual issue raised by the Plaintiffs' contract claim.

¶74 Based on the foregoing, the District Court's judgment is affirmed in part and reversed in part and this case is remanded for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY