JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Glacier Bancorp, Inc. (Glacier) appeals the order of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to Eide Bailly LLP (Eide). Western Security Bank (Western) appeals the judgment of the District Court awarding a special jury verdict in favor of Eide. We affirm in part, reverse in part, and remand for further proceedings.
¶2 We review the following issues on appeal:
¶3 Did the District Court properly grant summary judgment to Eide based upon its conclusion that Eide did not owe Glacier a duty of care? ¶4 Did Glacier fail to plead with sufficient particularity its fraudulent misrepresentation claim?
¶5 Did Western’s fraudulent misrepresentation claim and its negligent misrepresentation claim fail to state claims upon which relief could be granted?
FACTUAL AND PROCEDURAL BACKGROUND
¶6 Intermountain Mortgage Company (IMC) was a Montana corporation in the business of lending money to home purchasers. IMC borrowed money for its home loans through a warehouse line of credit from First Citizens Bank (FCB). FCB was a subsidiary of Citizens Development Corporation (CDC). The lending agreement between IMC and FCB required IMC to procure for FCB’s benefit an annual audit of its balance sheet and income statement to be performed by a certified public accounting firm. FCB used the audit reports yearly in deciding whether to renew, and for how much, IMC’s warehouse line of credit. IMC chose Eide to perform the audits. Eide began performing the annual audits of IMC’s financial statements in 1989. Eide never entered any contractual agreements with FCB, CDC, Glacier, or Western.
¶7 Eide agreed to perform the annual audits in accordance with generally accepted accounting principles. Eide’s engagement letter had informed that “because we will not perform a detailed examination of all transactions, there is a risk that a material misstatement may exist and not be detected by us.” Eide further agreed to render an opinion on the fairness of IMC’s financial statements. Eide’s audits resulted in *37 the issuance of “unqualified opinions” regarding IMC’s financial statements. An unqualified opinion represents with reasonable assurance, rather than absolute assurance, that the audited financial statements do not contain material misstatements.
¶8 CDC announced in November 2005 that it would be selling its stock. Glacier investigated whether to purchase CDC. Glacier, a bank holding company, owns subsidiary banks in Montana and several other western states. Glacier reviewed the financial information of CDC’s subsidiary banks, including FCB. Glacier reviewed Eide’s most recent audit reports of IMC as part of its due diligence investigation.
¶9 Glacier publicly announced its merger with CDC on April 20, 2006. The sale closed on September 30,2006. Glacier merged FCB into Western, its existing Montana state-chartered subsidiary bank. Western took over the line of credit to IMC that FCB previously had issued. IMC disclosed on February 8, 2007, that its chief financial officer, Angela Hakala (Hakala), had been manipulating the financial records of IMC.
¶10 Hakala’s financial manipulation concealed the diversion of approximately $7.2 million that had been used to support IMC’s business operations. Hakala’s manipulation of funds had occurred during the years when Eide had issued unqualified opinions of IMC’s financial statements. Hakala’s misconduct had led IMC to overstate its assets, income, and profits. Hakala’s misconduct left IMC unable to repay its loans to Western.
¶11 Glacier and Western filed a joint complaint against Eide on November 21,2007, that contained a single count entitled professional negligence. Glacier and Western claimed that they had relied upon Eide’s audit reports of IMC’s financial statements in the purchase of CDC. Glacier and Western alleged that IMC’s deposits and loans with FCB “constituted a substantial portion” of CDC’s deposits and that Glacier had relied upon the accuracy of Eide’s audit reports in establishing a price for the purchase of CDC.
¶12 Glacier moved for partial summary judgment on April 14, 2008. Glacier sought a declaration regarding the duty of care that accountants owe to third parties when no privity of contract exists between the parties. Eide responded with a cross-motion for summary judgment. Eide argued that its auditors owed no duty of care to third parties like Glacier due to a lack of “near privity” between the parties and because Eide had not intended to have Glacier use the audit reports in evaluating the merger with CDC.
¶13 The parties disputed specifically the applicability of this Court’s decisions in Thayer v. Hicks, 243 Mont. 138, 793 P.2d 784 (1990), and *38 Jim’s Excavating Service v. HKM Associates, 265 Mont. 494, 878 P.2d 248 (1994). The District Court determined that the near privity rule from Thayer applied to Glacier’s claim. The court granted summary judgment to Eide on the grounds that Glacier had failed to establish that Eide owed it a duty under the Thayer near privity approach, or, alternatively, under the Restatement (Second) of Torts § 552 (1977) approach.
¶14 Glacier further argued that its complaint alleged a fraudulent misrepresentation claim. The District Court dismissed Glacier’s fraudulent misrepresentation claim for insufficient pleading and noted that “the word fraud is absolutely absent from the Complaint.” These summary judgment rulings of August 6, 2008, effectively ended Glacier’s involvement with the litigation before the District Court.
¶15 Western, who had not been a party to the cross-motions for summary judgment, filed an amended complaint on October 8, 2008. Western added a claim for negligent misrepresentation and a claim for fraudulent misrepresentation. The court dismissed the two new claims on the basis that they failed to state a claim upon which relief could be granted.
¶16 Western proceeded to trial. Trial lasted nine days. The court instructed the jury to determine Eide’s duty of care to Western according to the Thayer near privity standard. The jury returned a special verdict finding that Eide owed Western a duty of care and that both Western and Eide had been causally negligent. The jury allocated seventy percent causal negligence to Western and thirty percent causal negligence to Eide.
¶17 Western appeals the court’s application of the Thayer standard, appeals the dismissal of its negligent misrepresentation claim and its fraudulent misrepresentation claim, and seeks a new trial based upon various evidentiary rulings and the court’s jury instructions. Glacier appeals the court’s summary judgment ruling and the court’s dismissal of its fraudulent misrepresentation claim.
STANDARD OF REVIEW
¶18 We review de novo a district court’s grant or denial of a summary judgment motion. Cole v. Valley Ice Garden LLC, 2005 MT 115, ¶ 4, 327 Mont. 99, 113 P.3d 275. We review de novo a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6). Cowan v. Cowan, 2004 MT 97, ¶ 10, 321 Mont. 13, 89 P.3d 6. This Court will not disturb a district court’s ruling on the grant or denial of a motion to amend the pleadings absent an abuse of discretion. Stipe v. First Interstate Bank-Polson, 2008 MT 239, ¶ 27, 344 Mont. 435, 188 P.3d *39 1063. We review jury instructions in their entirety in order to determine if they fully and fairly instruct the jury on the law applicable to the case. Peterson v. St. Paul Fire & Marine Ins. Co., 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904. We conduct plenary review to the extent the district court bases its discretionary ruling upon a conclusion of law. Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 26, 351 Mont. 464, 215 P.3d 649.
DISCUSSION
¶19 Did the District Court properly grant summary judgment to Eide based upon its conclusion that Eide did not owe Glacier a duty of care?
¶20 The District Court concluded that the Thayer near privity approach controlled the issue of whether Eide owed Glacier a duty of care. The court granted summary judgment to Eide in light of its determination that Eide did not know or intend that Glacier would rely on Eide’s audit reports in the Glacier-CDC merger transaction. The court alternatively concluded that Eide did not owe Glacier a duty of care under the Restatement (Second) of Torts § 552.
¶21 We first draw a distinction between a claim against an accountant for professional negligence and a claim against an accountant for negligent misrepresentation. The California Supreme Court recognizes the tort of professional negligence as “separate and distinct” from the tort of negligent misrepresentation. Bily v. Arthur Young & Co., 834 P.2d 745, 768 (Cal. 1992). This Court has not squarely addressed the issue. This Court instead has assumed that the two claims represent separate causes of action. May v. ERA Landmark Real Est, 2000 MT 299, ¶¶ 42-43,302 Mont. 326, 15 P.3d 1179; Durbin v. Ross, 276 Mont. 463, 472, 916 P.2d 758, 763-64 (1996).
¶22 A professional negligence claim asserts that the accountant negligently performed its professional services. These professional services often involve the performance of an audit. The plaintiff in any professional negligence action “must prove that the professional owed him a duty, that the professional failed to live up to that duty,” and that the professional’s failure caused damages to the plaintiff. Carlson v. Morton, 229 Mont. 234, 238, 745 P.2d 1133, 1136 (1987).
¶23 A negligent misrepresentation claim asserts, in contrast, that the plaintiff justifiably relied on false information negligently provided by an accountant. False information provided by an accountant often appears in an audit report. This Court has recognized a common law tort of negligent misrepresentation. Jackson v. State, 1998 MT 46, ¶ 36, 287 Mont. 473, 956 P.2d 35.
¶24 The Court also has approved the definition of negligent *40 misrepresentation found in the Restatement (Second) of Torts § 552 in the professional context. May, ¶ 61 (upholding a negligent misrepresentation claim against a real estate agent who altered a contract document); Durbin, 276 Mont. at 472, 916 P.2d at 764 (recognizing a negligent misrepresentation claim when a realtor allegedly misrepresented facts to a buyer about the legality of a septic system); St. Bank of Townsend v. Maryann’s, Inc., 204 Mont. 21, 33, 664 P.2d 295, 301 (1983) (approving a negligent misrepresentation claim against a bank in a promissory note dispute); Jim’s Excavating Serv., 265 Mont, at 504-05, 878 P.2d at 254 (concluding that a § 552 claim should control the issue of a designer’s liability to an unknown contractor who relies on the designer’s plans and specifications).
¶25 Glacier’s complaint contained a single count under the heading “Professional Negligence.” Glacier asserted a third-party claim against Eide. Glacier sought partial summary judgment regarding what duty of care an accountant owes to a third party. Glacier does not assert a professional relationship. “[T]here can be no claim of professional negligence,” without a duty arising from a professional relationship. Durbin, 276 Mont. at 472, 916 P.2d at 763.
¶26 Glacier’s complaint set out allegations that Eide supplied false information in Eide’s audit reports of IMC. Glacier alleged that Eide produced overstated audit reports, falsely represented that IMC financial statements had been prepared in accordance with generally accepted accounting principles, and provided unqualified opinions that Glacier had relied upon in a merger transaction. Glacier asserted that Eide negligently produced audit information that failed to disclose that IMC had used funds for purpose other than paying down the line of credit. Glacier claimed that its justifiable reliance on Eide’s audit reports caused it to suffer money damages. Glacier’s claim more properly should be classified as one for negligent misrepresentation despite the “Professional Negligence” label in its complaint. Id., 916 P.2d at 763-64.
¶27 This Court has treated professional negligence claims according to § 552 standards when the third party essentially alleges reliance on misrepresentations of information. Jim’s Excavating Serv., 265 Mont. at 504-05, 878 P.2d at 254. The Court there concluded “that in this case, and in other cases wherein a contractor brings a suit against the project engineer or architect, the approach set forth in § 552 of the Restatement should control.” Id. at 504, 878 P.2d at 254. Other jurisdictions have followed § 552 when a plaintiff asserts a claim for professional negligence based on alleged negligence in supplying information. The Supreme Court of New Jersey noted that the *41 plaintiffs’ claim “can be viewed as grounded in negligent misrepresentation” even though the plaintiffs directed théir theory at the service performed by the accountant. H. Rosenblum, Inc. v. Adler, 461 A.2d 138, 142 (N.J. 1983) (superseded by statute on other grounds). The California Supreme Court concluded that a claim presents a cause of action in negligent misrepresentation when the third party alleges reliance on the audit report itself rather than on the performance of the actual audit. Bily, 834 P.2d at 772.
¶28 The District Court did not distinguish a professional negligence claim from a negligent misrepresentation claim. The District Court simply determined that the Thayer near privity standard controlled the issue of an accountant’s duty to third parties. We conclude that Glacier has asserted a third-party negligent misrepresentation claim against Eide. The Dissent claims that the Court’s characterization of Glacier’s claim essentially has “remade” Glacier’s claim on appeal. We disagree. We have done nothing more than identify the law applicable to the undisputed facts. Slauson v. Marozzo Plumbing & Heating, 2009 MT 333, ¶ 13, 353 Mont. 75, 219 P.3d 509. The title that a party attaches to a legal claim in a pleading does not bind our analysis, particularly when the party otherwise has failed to allege facts to support the improperly titled claim. Glacier and Eide have requested that this Court define the scope of liability stemming from their relationship. We have committed no more impropriety here than any court would in refusing to allow a litigant with a products liability claim to sue for “ordinary negligence.” See Dayberry v. City of E. Helena, 2003 MT 321, ¶¶ 22-23, 318 Mont. 301, 80 P.3d 1218. Likewise, this Court has refused to allow a workers’ compensation claimant to circumvent the exclusivity provision by giving an ordinary negligence claim a title of intentional battery. Alexander v. Bozeman Motors, Inc., 2010 MT 135, ¶ 32, 356 Mont. 439, 234 P.3d 880.
¶29 The Dissent denounces our refusal to be misled by the “Professional Negligence” title as “especially egregious, given that Glacier actually eschews the Restatement’s approach.” The record reveals, however, that Glacier alternatively advocated for the Restatement approach, including its request to the District Court in its reply brief that “the Court should find that: (1) the § 552 standard governs [Glacier’s] claims.” We doubt Glacier will experience the surprise exclaimed by the Dissent, given that the District Court found it necessary to conduct an alternative analysis and reach an alternative conclusion that Glacier had not satisfied its burden of proof to survive summary judgment under th e Restatement (Second) of Torts § 552 approach.
*42 ¶30 The facts do not present, and we do not address, the issue of an accountant’s liability to third parties under a general theory of professional negligence, as the Dissent would have us do. We instead address the appropriate duty of care that an accountant owes to a third party who asserts a claim for negligent misrepresentation. We decline to address the Dissent’s arguments on this point other than to state that we simply will not further develop third-party professional negligence law until presented with a factual dispute that actually gives rise to such a claim.
¶31 The Restatement (Second) of. Torts § 552 defines the cause of action for negligent misrepresentation that plaintiffs may assert against those who negligently obtain and communicate false information. This Court followed the Restatement (Second) of Torts § 552 approach in Jim’s Excavating Service for professional negligence suits against engineers and architects who had supplied information as part of their services. Jim’s Excavating Serv., 265 Mont. at 504-05, 878 P.2d at 254. The Court concluded that the engineering firm owed a duty of care to noncontractual contractors when it had supplied design plans and specifications for a project even though the specific identity of the contractors had not been known at the time that the firm supplied the information. Id. at 506, 878 P.2d at 255. The Court determined that the firm “knew or should have foreseen” that some contractor eventually would rely on the firm’s plans and specifications. Id.
¶32 Under § 552, the noncontractual third party does not have to be actually known or specifically identified at the moment the accountant supplies the information. Restatement (Second) of Torts § 552 cmt. h. Liability may attach if an accountant intends the information to influence one “who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.” Id. A member of the larger class of persons who might learn of the information through the ever-present possibility of repetition and circulation of information, however, could not hold the accountant liable. Id.
¶33 Comment a to § 552 further informs that not every user of commercial information may hold the professional who supplied the information to a duty of care. Id. at cmt. a. “[T]he use to which the information will be put” defines the scope of the duty of care when supplying commercial information. Id. A third party who relies on information may hold the supplier of that information to a duty of care in circumstances only in which the supplier had been “manifestly aware of the use to which the information was to be put and intended *43 to supply it for that purpose.” Id.; Jim’s Excavating Serv., 265 Mont. at 505-06, 878 P.2d at 254-55.
¶34 Section 552(2) limits an accountant’s liability for negligent misrepresentation claims. Section 552(2)(a) limits liability to parties for whose benefit the accountant intends to supply the information and to parties whom the accountant knows will receive the information through the intended, benefitting parties. Section 552(2)(b) further limits liability to parties who rely on the information in a transaction that the accountant intended or knew the information would influence. This approach protects accountants from unforeseen liability exposure when the recipients circulate the information to unforeseeable parties and when the recipients use the information in unforeseeable transactions. Restatement (Second) of Torts § 552 cmts. a, j.
¶35 We routinely have applied § 552 to claims for negligent misrepresentation. Durbin, 276 Mont. at 472, 916 P.2d at 764; Jim’s Excavating Serv., 265 Mont. at 504-05, 878 P.2d at 254; St. Bank of Townsend, 204 Mont. at 33, 664 P.2d at 301. The parties have presented no compelling reasons why we should decline to apply § 552 here. We turn then to analyze whether Eide owed Glacier a duty of care on Glacier’s negligent misrepresentation claim according to the standards set forth in § 552.
¶36 Glacier and Eide filed cross-motions for summary judgment on an accountant’s duty to third parties. Both parties filed affidavits in support of their motions. Eide presented the affidavit of John Jacobsen, Eide audit partner, in which Jacobsen declared that Eide had not intended or known that Glacier would rely upon any of its audit reports. Jacobsen attached to his affidavit the engagement agreement between Eide and IMC. Jacobsen acknowledges that, beginning in 1995, IMC funded its mortgage operations primarily through a warehouse lending agreement that it had arranged with FCB. Jacobsen emphasizes, however, that Eide never intended that the audit reports would be used to evaluate a possible merger transaction. Jacobsen further states that Eide had not been aware that IMC or other recipients of the audit reports would use the audit reports to influence Glacier in a merger transaction.
¶37 Jacobson’s affidavit shifted the burden to Glacier to provide substantial evidence that raises a genuine issue of material fact regarding Eide’s intent or Eide’s knowledge as to Glacier’s use of the audit reports in evaluating the merger transaction. Glacier filed two affidavits-one from its expert witness and one from its own counsel. Glacier’s expert, Larry Barton, opined that Eide “knew or should have known” that the audit reports “likely” would be circulated to financial *44 institutions who did business with IMC, including Glacier. Barton opines that Eide should have known that IMC could be acquired by Glacier in light of the fact that Eide holds itself out as a Top 25 Accounting Firm.
¶38 Barton’s position potentially could expose Eide to liability to an infinitely large class of possible users of the audit reports in transactions ranging from warehouse lending agreements to merger transactions. The Restatement approach may not require that Glacier’s specific identity be known to Eide at the time Eide issued the audit reports. Restatement (Second) of Torts § 552 cmt. h; Jim’s Excavating Serv., 265 Mont. at 504, 878 P.2d at 254. The Restatement does require, however, that Glacier be one for “whose benefit and guidance” the information is supplied, and not merely one of the many potential persons to whom the audit reports could be circulated. Restatement (Second) of Torts § 552 cmt. h.
¶39 Barton can do no more than speculate that Eide “likely” should have known that FCB would supply the audit reports to Glacier. Barton’s affidavit failed to rebut Eide’s claim that it had not known that FCB would provide the audit reports to Glacier for use in evaluating the merger transaction. Barton and Glacier have not provided evidence that Eide had been “manifestly aware of the use to which the information was to be put” or that Eide “intended to supply it for that purpose.” Id. at cmt. a; Jim’s Excavating Serv., 265 Mont. at 505-06, 878 P.2d at 254-55.
¶40 Glacier also filed a M. R. Civ. P. 56(f) affidavit from its counsel, who claimed that ongoing discovery would reveal the essential facts that would preclude summary judgment in Eide’s favor. Mere speculation as to what future discovery would reveal fails to give rise to genuine issues of material fact sufficient to meet Glacier’s burden. Envtl. Contrs. LLC v. Moon, 1999 MT 178, ¶ 19, 295 Mont. 268, 983 P.2d 390. Glacier had over eight months to uncover some information that would indicate that Eide had known that the audit reports would end up in Glacier’s hands. Glacier itself brought this issue to a head when Glacier filed its motion for summary judgment on the issue of Eide’s duty. Glacier cannot complain of insufficient time to conduct discovery.
¶41 Glacier did not provide an affidavit from any of its own representatives who could assert that Eide had known that Glacier would rely on the audit reports. No affidavit from any representatives of FCB, CDC, IMC, or Western likewise asserted that Eide knew or intended that the audit reports would be supplied to Glacier. Finally, Glacier did not submit any information to suggest that Eide knew that *45 IMC and FCB intended to circulate the audit reports to third parties.
¶42 Glacier failed to establish that its claim satisfied either of the requirements of Restatement (Second) of Torts § 552(2). Glacier does not qualify as “one of a limited group of persons” intended or known by Eide to be receiving the audit reports. Restatement (Second) of Torts § 552(2)(a). Glacier stands as a member of the greater class to whom Eide owed no duty of care, even though the information in Eide’s audit reports may have been repeated to Glacier and even though Glacier may have relied on the information. Id. at cmt. h. Eide did not intend, and did not know that IMC intended, to circulate the audit reports to the parties of the Glacier-CDC transaction.
¶43 Eide understood that “the use” to which the audit reports would be put involved the suitability and scope of the warehouse lending agreement. No evidence established that Eide understood that its audit reports would be used to evaluate a merger transaction. Id. at cmt. a. The merger transaction is not “substantially similar” to the warehouse lending agreement between IMC and FCB. Id. at § 552(2)(b). Glacier’s reliance on the audit reports in its merger transaction constitutes a use different than the use for which Eide had supplied the information and one for which Eide does not owe Glacier a duty of care.
¶44 The Dissent seems to agree that the Restatement (Second) of Torts § 552, as adopted and applied in Jim’s Excavating Service, applies here. The Dissent apparently parts ways with the Court over the interpretation of the phrase “knew or should have foreseen.” The Dissent interprets this phrase to mean the equivalent of the “reasonably foreseeable plaintiff’ standard. Contrary to the Dissent’s interpretation, the phrase “knew or should have foreseen” neither served as a litmus test in Jim’s Excavating Service, nor reflected that Court’s analysis.
¶45 The Court in Jim’s Excavating Service adopted and applied the principles of the Restatement (Second) of Torts § 552. Jim’s Excavating Serv., 265 Mont. at 504-06,878 P.2d at 254-55. The Court held that “a third party contractor may successfully recover for purely economic loss [...] when the design professional knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied.” Id. at 506, 878 P.2d at 255 (emphasis added). The Dissent neglects to undertake the § 552 analysis applied in Jim’s Excavating Service and further misrepresents its holding. Our § 552 analysis follows the analysis adopted in Jim’s Excavating Service. Opinion, ¶¶ 24, 27, 31, 33, 35, 38-39. We have turned to principles set forth in § 552 and determined that Glacier has *46 not set forth facts to establish that Eide should have identified Glacier as a plaintiff who might rely on the IMC audits that Eide provided for purposes of the warehouse lending agreement.
¶46 We also agree with the District Court that Glacier failed to raise any genuine issue of material fact as to whether Eide intended, or knew that IMC intended, that the audit reports would be used in the CDC-Glacier merger transaction. The District Court correctly granted summary judgment to Eide on Glacier’s negligent misrepresentation claim under the Restatement (Second) of Torts § 552.
¶47 Did Glacier fail to plead with sufficient particularity its fraudulent misrepresentation claim?
¶48 The District Court determined that Glacier had failed to plead the elements of fraud with particularity as required under M. R. Civ. P. 9(b). Glacier argues that it pleaded with particularity the elements of fraud, except intent, which it pleaded generally, as allowed by M. R. Civ. P. 9(b). Glacier argues in the alternative that the court should have ruled on its oral motion to amend the complaint that it raised during the summary judgment hearing.
¶49 This Court has determined that “[o]f primary importance in understanding the particularity requirement of Rule 9(b) is the recognition that it does not render the general principles set forth in Rule 8 entirely inapplicable.” Fraunhofer v. Price, 182 Mont. 7, 14, 594 P.2d 324, 328 (1979) (citation omitted). M. R. Civ. P. 8(a) requires only “a short and plain statement of the claim” for relief. The sufficiency of a particular pleading under M. R. Civ. P. 9(b) often depends on the context in which the fraud is alleged to have occurred, how much detail is necessary to give adequate notice to an adverse party, and how much detail is necessary to enable an adverse party to prepare a responsive pleading. Id. at 15, 594 P.2d at 329.
¶50 The District Court concluded that Glacier had failed to plead fraud with particularity, in part, because the word “fraud” could be found nowhere in Glacier’s complaint. We agree with Glacier that it necessarily need not have used the word fraud in its complaint. Glacier’s argument that it intended to raise a fraud claim rings hollow, however, in light of the fact that its complaint contains one count, entitled “Professional Negligence.” We reject Glacier’s argument that all the elements of fraud sprinkled throughout general averments in its complaint rise to a degree sufficient to have provided Eide with notice of its intent to raise a fraudulent misrepresentation claim. Id., 594 P.2d at 329. Glacier failed to plead fraudulent misrepresentation with particular detail sufficient to put Eide on notice to prepare a *47 responsive pleading. Id., 594 P.2d at 329.
¶51 Glacier raised at the summary judgment hearing the possibility of filing an amended complaint to state its fraud claim with particularity. The District Court did not rule on Glacier’s claimed motion to amend. The court apparently concluded that Glacier never made such a motion. Glacier argues on appeal that the court abused its discretion when it failed to rule on the motion to amend. Glacier argues that two months remained under the court’s scheduling order to allow for amendments at the time of the summary judgment hearing. Glacier notes that M. R. Civ. P. 7(b) permits oral motions and that leave to amend a pleading “shall be freely given when justice so requires.” M. R. Civ. P. 15(a).
¶52 Glacier never filed a written motion for leave to amend its complaint before, during, or after the oral argument on the cross-motions for summary judgment. Glacier referred several times at the hearing to the possibility of filing a motion to amend. For example, Glacier’s counsel said, “so to the extent that we need to amend to add that complaint, we would seek the Court’s leave now to go ahead and file an amended complaint to do that.” Glacier’s counsel later added that “we asked for leave to file an amended complaint that more specifically sets forth our fraudulent misrepresentation claim.” The court noted that “[flraud isn’t in [the complaint], so you’re going to have to run it up the flag pole again.” Glacier’s counsel replied, “[f]ine, Your Honor, we will do that.” Finally, in Glacier’s closing arguments, Glacier’s counsel emphasized, “[s]o to the extent that we need to-we have asked your permission to file fraud with particularity, we will discuss that at a later time.”
¶53 Nothing in the record indicates that Glacier ever pursued a motion to amend its complaint at a later time. The District Court did not construe the comments made by Glacier’s counsel at the hearing to rise to the level of an oral motion to amend. The court analyzed the issue of whether Glacier had pleaded fraud with sufficient particularity on the only complaint before it. We cannot determine on the record before us that the court committed reversible error when it refused to rule on an oral motion to amend that Glacier never clearly made.
¶54 Did Western’s fraudulent misrepresentation claim and its negligent misrepresentation claim fail to state claims upon which relief could be granted?
¶55 The Court reviews an appeal from a district court's order granting a motion to dismiss based on the sufficiency of the complaint. Cowan, ¶ 10. A court should not dismiss a complaint for failure to state a claim *48 “unless it appears beyond doubt that the plaintiff can prove no set of facts” in support of the claim that would entitle the plaintiff to relief. Id. We must construe the complaint in the light most favorable to the plaintiff when reviewing a motion to dismiss under M. R. Civ. P. 12(b)(6) and take as admitted all well-pleaded factual allegations. Id. The Court has no obligation, however, to take as true legal conclusions or allegations that lack factual basis. Id. at ¶ 14.
¶56 Western’s amended complaint sets forth three counts: professional negligence, negligent misrepresentation, and fraudulent misrepresentation. Western may assert alternately or hypothetically “as many separate claims as [Western] has.” M. R. Civ. P. 8(e). The District Court dismissed Western’s'fraudulent misrepresentation claim for failure to plead the fraud claim with particularity. M. R. Civ. P. 9(b) requires a party to state with particularity “the circumstances constituting fraud or mistake.” A party may allege generally, however, malice, intent, knowledge, and other condition of mind. M. R. Civ. P. 9(b). A party seeking to establish a fraud claim must plead the nine elements of fraud, including materiality of the representation and the speaker’s intent that the receiving party should rely upon the representation. Durbin, 276 Mont. at 469, 916 P.2d at 762.
¶57 Though the allegations of fraud need be stated with particularity, we must read M. R. Civ. P. 9(b) in conjunction with the “short and plain statement” requirement of M. R. Civ. P. 8(a). Fraunhofer, 182 Mont, at 14, 594 P.2d at 328. This Court stated in Fraunhofer that “the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading” constitutes perhaps the most basic consideration in making a judgment as to the sufficiency of the pleading. Id. at 15, 594 P.2d at 329.
¶58 The District Court concluded that Western had not pleaded with particularity both materiality and “intent to injure.” Western’s complaint generally described the terms of the lending agreement and purpose for which IMC had procured the audit reports. Western specifically alleged that the warehouse agreement between IMC and FCB obligated IMC to procure an annual audit report for FCB’s purposes and that Eide knew that IMC was obligated to provide the audit reports to FCB. Western specifically alleged that Eide had overstated amounts reported in the audit reports. Western specifically alleged that Eide discovered that funds had been misappropriated, but had failed to indicate knowledge of the misappropriated funds in its unqualified audit reports. And finally, Western specifically alleged that FCB relied on Eide’s unqualified reports when it increased IMC’s line of credit from $7.5 million to $19.5 million over six years. Western *49 separately pleaded that the allegedly false representations “were material to credit decisions made by FCB.”
¶59 We must construe these factual allegations in the light most favorable to Western. Cowan, ¶ 10. Western recounted the allegedly false representations that resulted in its reliance on the audit reports. Western described the significance of the representations to its credit decisions and how the decisions led to its money damages. Western sufficiently pleaded the materiality of the allegedly false representations to satisfy the pleading requirement for fraudulent misrepresentation. See May, ¶ 26; Batten v. Watts Cycle & Marine, 240 Mont. 113, 118, 783 P.2d 378, 381-382 (1989).
¶60 Western also argues that the court improperly required Western to plead “intent to injure” as an element of its fraudulent misrepresentation claim. We agree. The court cited no authority for the “intent to injure” standard that it imposed on Western. Section 27-1-221, MCA, could be interpreted to require an “intent to injure” element as part of a claim for punitive damages based on actual fraud. M. R. Civ. P. 9(b) permits Western, however, to allege intent generally to support its claim for fraudulent misrepresentation.
¶61 Western only must plead factual allegations that Eide made a representation with the “intent it be relied upon” to satisfy the intent element of a prima facie fraud claim. Durbin, 276 Mont. at 469, 916 P.2d at 762; May, ¶ 21. Western alleged that Eide knew that IMC had procured the audit reports for FCB’s use in renewing the warehouse line of credit. Western further alleged that Eide had intended that FCB would rely on the representations contained in the audit reports.
¶62 M. R. Civ. P. 9(b) requires only that Western generally allege that Eide had intended for FCB to rely on its representations. Durbin, 276 Mont. at 469, 916 P.2d at 762; May, ¶ 21. The allegations in Western’s amended complaint contained sufficient detail to have put Eide on notice that it should prepare a responsive pleading on Western’s fraudulent misrepresentation claim. The District Court incorrectly imposed a heightened standard when it required Western to allege an “intent to injure.”
¶63 The District Court also dismissed Western’s negligent misrepresentation claim that Western included in its amended complaint. The court concluded this negligent misrepresentation claim simply duplicated Western’s professional negligence claim. The court expressed concern that Eide would be subject to different standards of duty if the court permitted both the professional negligence claim and the negligent misrepresentation claim.
¶64 Western has alleged that Eide made false representations of *50 material fact when it supplied unqualified audit reports of IMC’s financial statements. Western has asserted that Eide negligently misrepresented IMC’s financial condition when Eide failed to report IMC’s conduct of covering older loans with proceeds from new loans. Western has alleged that Eide knew that FCB would rely on the representations and that Eide knew the audit reports would influence the warehouse lending agreement between IMC and FCB. Western further alleged that FCB in fact had relied on the representations in increasing the amount of the line of credit, and that Western, as successor to FCB, had suffered damages as a result of its reliance. These allegations more properly set forth a cause of action for negligent misrepresentation. Opinion, ¶ 26. Proper classification of Western’s claim as one for third-party negligent misrepresentation alleviates the District Court’s concerns of repetitive claims and different duty standards.
¶65 The District Court’s classification of Western’s case as one for professional negligence resulted in its instruction to the jury on the Thayer near privity standard. Western argues that the court’s instruction on the wrong duty standard presumptively prejudiced its case. Eide counters that even if the court instructed on the wrong duty standard, the error does not merit reversal because the jury found that Eide owed Western a duty of care under the narrower Thayer duty standard.
¶66 Eide’s argument confuses the Thayer standard for the duty of care in third-party professional negligence claims with the Restatement (Second) of Torts § 552(2) standard for the duty of care in third-party negligent misrepresentation claims. Where a third party asserts a claim for negligent misrepresentation against an accountant, the court must instruct the jury according to the elements of a § 552 negligent misrepresentation claim. A § 552 claim includes the following elements: (1) the defendant supplied false information in the course of the defendant’s business, (2) the defendant failed to exercise reasonable care in obtaining or communicating the information, (3) the plaintiffs justifiable reliance on the false information caused the plaintiffs financial loss, (4) the plaintiff was one of a limited group of persons for whose benefit and guidance the defendant intended to supply the information or knew that the recipient intended to supply it, and (5) the plaintiff relied on the information in a transaction that the defendant knew the information would influence. Restatement (Second) of Torts § 552; Batten, 240 Mont. at 117, 783 P.2d at 381; Weigand v. Mont. Land & Real Est. Inv., 223 Mont. 137, 139, 724 P.2d 194, 196 (1986).
*51 ¶67 We agree with Western that the trial court must instruct the jurors fully and correctly on the applicable law of the case. Schuff v. Jackson, 2002 MT 215, ¶ 38, 311 Mont. 312, 55 P.3d 387. The District Court’s failure to instruct the jury fully and correctly on the applicable law of Restatement (Second) of Torts § 552 constitutes reversible error. Id. at ¶¶ 38-39. We reverse the District Court’s judgment awarding a special verdict in Eide’s favor and remand for a new trial at which the court must instruct the jury on Western’s § 552 negligent misrepresentation claim. We need not address Western’s various evidentiary claims and other challenges to the court’s jury instructions in light of our decision to remand for a new trial.
CONCLUSION
¶68 We affirm the District Court’s grant of summary judgment to Eide on all of Glacier’s claims. Glacier failed to present any evidence to establish that Eide intended, or knew that IMC intended, its audit reports to be used by Glacier or to be used in a merger transaction. Glacier failed to plead fraud with sufficient particularity.
¶69 We reverse the District Court’s dismissal of Western’s negligent misrepresentation claim and its fraudulent misrepresentation claim. We reverse the jury’s special verdict in favor of Eide and remand for a new trial.
CHIEF JUSTICE McGRATH, JUSTICES LEAPHART, COTTER, WHEAT and RICE concur.